Glaister, Appellant, *v.* Eazor Express, Inc.

486

Argued October 4, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD and JONES, JJ.

*Edward O. Spotts,* with him *Theodore M. Tracy,* for appellant.

*Joseph F. Weis, Jr.,* with him *Weis & Weis,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, November 18, 1957:

The plaintiff appeals from an order granting a new trial in a trespass action, on the defendant's motion, for the assigned reason that the jury's verdict was excessive.

As we have so often said, an appellant has a very heavy burden, upon an appeal from the award of a new trial, to show reversible error. "We will not reverse an order awarding a new trial unless a palpable abuse of discretion on the part of the trial judge is disclosed or unless an erroneous rule of law, which in the circumstances necessarily controls the outcome of the case, is certified by the trial judge as the sole reason for his action:" *Marko v. Mendelowski,* 313 Pa. 46, 47, 169 A. 99. But that does not mean that a trial court may grant a new trial out of hand or for reasons which do not rightly fall within the judicial orbit as confined by the jury's province. Otherwise, the granting of a new trial might possibly be from mere whim or caprice. The proper approach of judicial review on such an appeal was well stated by Chief Justice MAXEY in *Jones v. Williams,* 358 Pa. 559, 564, 58 A. 2d 57, as follows: "While this Court usually supports the action of the trial court in granting or refusing a new trial we do not entirely abdicate our reviewing functions in such cases. This Court, too, has the duty to determine from the record whether or not the jury's verdict was so contrary to the evidence as to shock one's sense of justice and to make the award of a new trial imperative so that

right may be given another opportunity to prevail."
The foregoing has since been quoted with approval a
number of times : see *Beal v. Reading Company,* 370 Pa.
45, 48, 87 A. 2d 214; *Carroll v. Pittsburgh,* 368 Pa. 436,
447, 84 A. 2d 505; and *Decker v. Kulesza,* 369 Pa. 259,
263, 85 A. 2d 413.

Inasmuch as the new trial in this case was not
granted for an erroneous ruling of law, our inquiry is
whether the court below abused its discretion in hold-
ing that the verdict was excessive. A careful consid-
eration of the entire matter impels the conclusion that
the new trial order lacks both factual and legal justi-
fication. There was neither direct conflict nor contra-
diction in the testimony adduced at trial, all of which
came from witnesses called by the plaintiff. The de-
fendant offered no testimony and expressly admitted
liability. The only matter in issue, therefore, was as
to the extent of the plaintiff's damages due to her tor-
tiously inflicted injuries and consequent incapacity. It
thus becomes unnecessary to relate the circumstances
of the passenger automobile and tractor-trailer collision
which inflicted the injuries in suit. On the question
of the extent of the plaintiff's injuries and the damages
she suffered thereby, the record discloses the following
material facts.

At the time of the accident, the plaintiff was 30
years old, unmarried, and employed in a plant of the
Schenley Distillers whence she was on her way home
from work as a guest in the passenger automobile in-
volved in the collision. Her work was on an assembly
line and consisted of sealing, packing, and crating bot-
tles. It was a type of work that could be performed
only by a person of good physical condition. After the
accident, the plaintiff experienced pain and discomfort
in her legs and back. Her family physician concluded,
after an examination, that she had a concussion of the

lumbo-sacral region which was aggravated by a sciatic nerve irritation. After fifty-two days of treatment she was still suffering back pains and continued to drag one leg. As a consequence, approximately two months after the infliction of the injury, her family physician referred her to a Pittsburgh orthopedic surgeon under whose care she was immediately hospitalized for eighty-four days. During most of this time the plaintiff was confined in a plaster shell. After her discharge from the hospital she was required to wear a back brace during the day and to sleep in a plaster shell at night. At the time of trial (two and a half years after the accident), she was still undergoing this type of treatment. Some six months following her first hospital experience, she was hospitalized for the surgical removal of a lump on her back which had been caused by the injection of drugs used to reduce muscle spasm. And six months later she was again hospitalized for a period of almost a month, during which time she underwent recumbency in the plaster shell as treatment for her back and leg pains. Three months after that she underwent another operation for the removal of a second lump on her back caused in the same manner as the first. It was two and a half years after the accident that she was finally able to return to work on a temporary basis although she had been working at intermittent intervals prior to this time. However, she continued to have pains in her back and legs.

The orthopedic surgeon concluded that the plaintiff is suffering from a chronic lumbo-sacral sprain with sciatica, and so testified. He stated that she had a permanent partial disability and that she will not be able to resume "any activities requiring any physical effort, particularly involving her back." He reported a neurosurgeon's conclusion that her long continued disability had resulted in traumatic neurosis. Another

doctor, a specialist in internal medicine, testified that the plaintiff has a fifty per cent permanent disability of the back. And, at trial, the plaintiff herself testified that she was still suffering back and leg pains. She could not walk without dragging one leg and was still required to wear a back brace during the day and to sleep in the plaster shell at night.

During the period of two and a half years between the accident and the trial the plaintiff was able to work only thirty-six out of one hundred and sixty-two days during which work was available. She had spent an aggregate of one hundred and seventeen days in the hospital. Her total out of pocket expenses amounted to $4,580.79, composed of $1,949.84 of lost earnings and $2,630.95 for medical and hospital expenses. At the time of trial she had a life expectancy of thirty-three years.

The jury returned a verdict for the plaintiff in the sum of $30,000 which the court below set aside without in any way demonstrating why, in the light of the testimony in the case which was not discredited, the verdict was excessive. Nor did the court give any indication by way of provision for a remittitur as to what it thought would represent a compensatory award in the circumstances.

A new trial is not to be granted simply because the trial judge, on the basis of the evidence in the case, would have arrived at a result different than that of the jury: *Decker v. Kulesza,* supra; *Donnelly v. Pennsylvania Co.,* 252 Pa. 175, 177, 97 A. 272. Nor should the jury's verdict be summarily set aside and a new trial ordered because of a mere conflict in testimony. *Jones v. Williams,* supra. Here, the fact is that there is not the slightest conflict in the testimony, all of which stands uncontradicted. As was said in *Beal v. Reading Company,* supra,: "So far as the record re-

veals, no facts are in dispute, and no issue of credibility or weight of testimony exists which requires the submission of this case to another jury. We will therefore reverse the order granting a new trial." This statement can, with equal pertinency, be applied to the instant case.

We have already indicated that a trial court must give a valid reason for its action in granting a new trial (*Beal v. Reading Company,* supra) and that vague generalities, such as "interests of justice" are not sufficient. See *Carroll v. Pittsburgh,* supra; *Jones v. Williams,* supra; *Decker v. Kulesza,* supra; *Martin v. Arnold,* 366 Pa. 128, 77 A. 2d 99; and *Stewart v. Ray,* 366 Pa. 134, 76 A. 2d 628.

In the instant case, the opinion for the court below does not suggest any substantial evidentiary factor that might be thought to justify an exercise of judicial discretion in the granting of a new trial. The sole reason given by the court for its action in the premises is that the testimony adduced by the plaintiff did not justify the quantum of the verdict. Of course, such a reason would be sufficient if there was evidence to support it. But, it was only by the court's constituting itself its own medical expert, in opposition to the qualified witnesses produced, that it was able to come to its depreciatory estimate of the testimony in the case. Notwithstanding the positive and unimpeached testimony of the doctors, as to the extent and serious physical effect of the plaintiff's injury, the court below minimizes the doctors' opinions by interposing that "An examination of the medical testimony produced by plaintiff bared of its technical terms reveals that plaintiff suffered a sprain of the lower back, involving, to some extent, the sciatic nerve" and further noted that "Plaintiff was able to remove herself from the damaged car and she climbed along a stone wall and released other people

from another damaged automobile, that she remained more than two hours at the scene of the accident on her feet . . ." without any apparent allowance for the possible effect of shock from the accident or the non-immediacy of the result to plaintiff's back from the impact of the blow. It was not how the plaintiff felt or acted the night of the accident but her subsequent physical impairment for which she claimed damages. The court also "noticed . . . the wide intervals of time between visits to the doctor by plaintiff", as if that circumstance showed an absence of serious incapacity. What the plaintiff was suffering from was a back injury and not an illness—a vertebrae and nerve trauma and not an infection. It is common knowledge that the former does not necessarily require frequent visits to the doctor to evidence its seriousness, its painfulness or its incapacitating physical effect.

How the learned court below happened to view the uncontradicted testimony in this case, as it did, can be explained only on the ground that it came to regard as evidence the disparagements of the plaintiff's testimony which the defendant sought to inject or insinuate. At the very outset of the trial counsel for the defendant stated to the court that "the defendant wishes to announce that we are willing to admit responsibility for the accident and ask the jury to assess fair and reasonable damages." And, immediately after the plaintiff rested her case the defendant also rested without offering any testimony. Yet, the opinion for the court below states that, in passing upon the motion for a new trial, "We have consequently ignored the defendant's testimony which tended to minimize the injuries suffered by the plaintiff." There was not a word of such testimony in the record. Counsel for the defendant states in the appellee's history of the case that "The defendant had admitted liability and produced no tes-

timony in order to secure the right to close to the jury last." If by that statement, the defendant means to suggest that there was countervailing testimony available which the defendant chose not to offer merely to gain a tactical trial advantage in order of summation to the jury, the implication is unfair and must be discountenanced. The inference that, had the testimony adduced by the plaintiff been open to controversion, the defendant would have introduced the contradicting proofs, stands unimpaired, and the jury was, therefore, warranted in accepting the testimony for the plaintiff at face value. Such being the case, the size of the verdict does not shock our conscience and, consequently, was not excessive. Accordingly, the granting of a new trial constituted a palpable abuse of discretion.

The order of the court below is reversed and judgment is here entered on the verdict for the plaintiff.