521 A.2d 413

Daniel L. STEVENSON, Daniel L. Stevenson, Administrator of the Estate of Daniel L. Stevenson, Jr., Deceased, and the Estate of Delcita M. Stevenson, Deceased, Virginia A. Stevenson and Valerie Stevenson, a minor, by Daniel L. Stevenson, her parent and natural guardian, Appellants,

v.

GENERAL MOTORS CORPORATION, Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 20, 1986.

Decided Feb. 23, 1987.

George J. O'Neill, Philadelphia, for appellants.

Harry A. Short, Jr., George J. Lavin, Jr., Gerard Cedrone, Thomas Finorelli, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

■ Appellants Daniel L. Stevenson, Virginia A. Stevenson and Valerie Stevenson appeal by allowance a Superior Court order which affirmed the Court of Common Pleas of Philadelphia. Common Pleas granted appellee General Motors Corporation's motion for a new trial. Appellants claim that the trial judge abused his discretion in granting the motion based upon evidence offered in the second half of a bifurcated trial. Because the jury's finding of liability is not a verdict upon which final judgment can be entered or from which an appeal will lie, we hold that a trial court may properly examine all of the evidence in ruling on post-trial motions filed after the damage verdict ends the trial. Our consequent examination of the entire record also leads us to hold the trial judge did not abuse his discretion in granting a new trial. We therefore affirm Superior Court. 345 Pa.Super. 632, 496 A.2d 860 (1985).

Appellants, Daniel L. Stevenson, in his own right and as administrator of the Estate of Daniel L. Stevenson, Jr., Deceased, and the Estate of Delcita M. Stevenson, Deceased, Virginia A. Stevenson and Valerie Stevenson, brought suit in Philadelphia Common Pleas against appellee General Motors Corporation for damages stemming from an

accident occurring on May 6, 1973 on the New Jersey Turnpike. The trial was bifurcated into liability and damage portions at the direction of the court. Appellants, invoking the principles of § 402A of the Restatement (Second) of Torts, argued that a steering defect in the Vega Virginia Stevenson was driving led to the crash which killed two of the Stevenson children and injured the three surviving members of the family. The liability portion of the trial was held from April 15 to April 23, 1982. After a finding of liability, appellee filed a motion for judgment notwithstanding the verdict on May 5, 1982, and a motion for a new trial on May 26, 1982.[1] The trial on damages was held on January 4 to January 26, 1983 with a separate jury returning a verdict of $1,025,000 in favor of the appellants. On February 6, 1983, appellee filed a motion for a new trial.

Citing testimony during the damage phase by the appellants' personal psychiatrist that the appellants are "unreliable historians," the trial judge granted appellee's motion for a new trial. Noting that a products liability claim based wholly upon circumstantial evidence requires the absence of reasonable secondary causes of the accident,[2] the trial judge opined that the plaintiffs "incredible" testimony as to the absence of secondary causes warranted a new trial on *both* liability and damages.

Relying on the trial court's opinion, Superior Court affirmed. On appeal to this Court, appellants contend that the trial judge erred in granting a new trial on both liability and damages and that his upsetting of the liability verdict given in that portion of the bifurcated trial was predicated upon inadmissible after-acquired evidence.

**1.** Neither the docket nor the briefs indicate how the trial judge disposed of these post-trial motions. Additionally, we note that no entry of the finding of liability was made on the docket.

**2.** Common Pleas, using the conflicts of law analysis of *Griffith v. United Air-Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964), determined that Maryland law was applicable. *See, e.g., Virgil v. "Kash N' Karry" Service Corp.,* 61 Md.App. 23, 484 A.2d 652 (1984) (products liability claim based upon circumstantial evidence of defective thermos requires negation of other possible causes), *cert. denied,* 302 Md. 681, 490 A.2d 719 (1985).

A jury's finding of liability in a bifurcated trial is not unassailable by the trial judge following the damage portion of the proceeding. We therefore hold that the trial judge acted properly and affirm the order of Superior Court remanding the matter for a new trial on both liability and damages. Our further review of this record leads us to believe that the trial judge properly exercised his discretion in ordering that the new trial not be bifurcated.

## I.

■ The various questions posed by the parties in this case come down to one issue: Whether the trial court may upset a finding of liability in a bifurcated trial based upon evidence adduced at the damage phase of the case? Put conversely, is the jury's finding of liability unassailable by the trial judge after the damage phase of the trial?

Should the trial judge have the power to act and properly set aside a finding of liability after the second phase on damages of a bifurcated trial is over, then appellants' arguments lose their vitality. The problem is best addressed by first considering whether the jury's finding of liability assumes the characteristics of a verdict on which judgment can be finally entered, subject to post-trial motions and appeal.

Rule 213(b) of the Pennsylvania Rules of Civil Procedure, upon which the trial judge relied in bifurcating the trial, states:

> The court, in furtherance of convenience or to avoid prejudice, may, on its own motion or on motion of any party, order a separate trial of any cause of action, claim or counterclaim, set-off, or cross-suit, or of any separate issue, or of any number of causes of action, claims, counterclaims, set-offs, cross-suits, or issues.[3]

Pa.R.C.P. 213(b). A number of policy considerations have been forwarded to support separating the trial on liability

---

**3.** The note of the Procedural Rules Committee states "[t]his rule is an almost verbatim adoption of Rule 42 of the Federal Rules of Civil Procedure."

from damages in the personal injury context. One advantage often mentioned is that this separation obviates the expense of preparing for trial on damages until liability has been found. Note, *Implications of Bifurcation in the Ordinary Negligence Case,* 26 U.Pitt.L.Rev. 99, 110 (1964). The stimulus to settle after the finding of liability is also perceived as an important advantage of bifurcation. Zeisel and Callahan, *Split Trials and Time Saving: A Statistical Analysis,* 76 Harv.L.Rev. 1606, 1608 (1963). Apparently, in the instant case, the appellants hoped to avoid procuring costly discovery on damages until needed and the appellee sought to secure an opportunity to re-evaluate its position upon a finding of liability but prior to the returning of a large judgment.

■ If a bifurcated trial were considered two distinct trials, rather than two halves of one trial, the finding of liability would be treated as a judgment, subject to post-trial review and appeal. This treatment does not withstand scrutiny under general principles relating to impermissible interlocutory appeals. A jury's finding of liability in a bifurcated trial is not a finding on which a final judgment can be entered. Indeed, in this case it was not even docketed.

42 Pa.C.S. § 5105(a) states, in pertinent part:

(a) General rule.—There is a right of appeal under this subsection from the *final order* (including an order defined as a final order by general rule) of every:

(1) Court or district justice of this Commonwealth to the court having jurisdiction of such appeals.

42 Pa.C.S. § 5105(a) (emphasis supplied). The Pennsylvania Rules of Appellate Procedure buttress this approach. Rule 301(a) states, "[n]o order of a court shall be appealable until it has been entered upon the appropriate docket in the lower court." Rule 301(c) mandates that a direction by a lower court that a judgment, sentence or other order shall be entered "shall be reduced to judgment and docketed before an appeal is taken." Subsection (d) notes:

(d) Reduction of decision to judgment. Subject to any inconsistent general rule applicable to particular classes of matters, the clerk of the lower court shall on praecipe of any party (except a party who by law may not praecipe for entry of an adverse order) *forthwith prepare, sign an appropriate order evidencing any action from which an appeal lies* either as of right or upon permission to appeal or allowance of appeal.[4]

Pa.R.A.P. 301(d) (emphasis added). These rules emphasize that an order, from which an appeal may be taken, must be docketed before the appeal is sought.

Our decisions adhere to the principle that discouraging interlocutory appeals furthers the goals of judicial economy. "It is fundamental law in this Commonwealth that an appeal will lie only from final orders unless otherwise expressly permitted by statute." *T.C.R. Realty, Inc. v. Cox*, 472 Pa. 331, 337, 372 A.2d 721, 724 (1977). Discouraging interlocutory appeals avoids "piecemeal determinations and the consequent protraction of litigation." *Marino Estate*, 440 Pa. 492, 494, 269 A.2d 645, 646 (1970) (*quoting Sullivan v. Philadelphia*, 378 Pa. 648, 649, 107 A.2d 854, 855 (1954)). As to what constitutes a final order, the Court in *T.C.R. Realty* stated:

[W]e have looked beyond the technical effect of the adjudication to its practical ramifications. *Bell v. Consumer Discount Company*, 465 Pa. 225, 348 A.2d 734 (1975). We have variously defined a final order as one which ends the litigation, or alternatively disposes of the entire case. *Piltzer v. Independence Savings and Loan Association*, 456 Pa. 402, 404, 319 A.2d 677, 678 (1974); *James Banda, Inc. v. Virginia Manor Apartments, Inc.*, 451 Pa. 408, 409, 303 A.2d 925, 926 (1973). Conversely phrased, an order is interlocutory and not final unless it effectively puts the litigant "out of court." *Ventura v. Skylark Motel, Inc.*, 431 Pa. 459, 463, 246 A.2d 353, 355 (1968). In *Marino Estate*, 440 Pa. 492, 494, 269 A.2d 645,

**4.** The rules suggest a problem of circular reasoning. One may appeal a final order and a final order is what is appealable.

646 [1970], we said that an order is not interlocutory if it precludes a party from presenting the merits of his claim to the lower court.

*T.C.R. Realty, Inc., supra,* 472 Pa. at 337, 372 A.2d at 724. The finding of liability in the instant case did not signal the end of the litigation nor force the defendant "out of court." Allowing the litigants to file post-trial motions and require their final resolution at the end of the first phase of a bifurcated trial would foster needless piecemeal determinations.

The one Pennsylvania decision relevant to the narrow issue posed, *Kaiser v. Meinzer,* 272 Pa.Superior Ct. 207, 414 A.2d 1080 (1979), *appeal dismissed,* 498 Pa. 136, 445 A.2d 104 (1982), lends support to the principle that findings in bifurcated proceedings are not "final orders" subject to appeal. Kaiser, a New York corporation, brought suit against Development and Construction Company (Development) and Chemical Bank following Development's default on a loan obligation to Kaiser. The complaint was in three counts. First, Kaiser alleged that Development and Chemical Bank had conspired to prevent Kaiser from developing property used to secure the note pursuant to a purported settlement agreement between Chemical and Kaiser. The second count sought to recoup monies held in escrow by the title insurance company involved in the deal. The final count was against Development for default on the promissory note.

The trial judge, in a pre-trial order, stated that the portion involving money due (the third count) shall be tried first. Following a non-jury trial, the court held that Kaiser could not recover on the promissory note because the transaction was usurious under New York law. Kaiser did not file exceptions to the findings and Development filed a praecipe for entry of judgment. Common Pleas then granted Kaiser's motion to strike the judgment and amended the opinion to conclude that the issues addressed in the decision were interlocutory, but appealable because they involved a controlling question of law as to which there was substan-

tial difference of opinion and because an immediate appeal might advance the final determination of the matter.[5] Holding that the trial court's determinations were neither final orders nor appealable interlocutory orders, Superior Court quashed the appeal and remanded to the trial court for further proceedings.

Superior Court first noted that had the trial judge *severed* Kaiser's claim under count three of the complaint, a different result would have been warranted as "a severance of actions effects a splitting of them into one or more independent actions for all purposes, including trial and appellate procedure." *Id.*, 272 Pa.Superior Ct. at 216, 414 A.2d at 1085. Superior Court reviewed the trial court's handling of the matter and held that the trial judge did not intend a severance. Citing both the provisions of the Appellate Court Jurisdiction Act, now incorporated into the Judicial Code at 42 Pa.C.S. § 742, which limit Superior Court's review to "final orders" and the discussion of what constitutes a "final order" in *T.C.R. Realty, Inc., supra*, the *Kaiser* court concludes that "Kaiser's action on the promissory note was only one phase of the entire proceeding against the defendants." *Id.*, 272 Pa.Superior Ct. at 218, 414 A.2d at 1086. Superior Court also cites the avoidance of piecemeal resolution of disputes as a policy goal furthered through discouraging interlocutory appeals.[6]

*Kaiser v. Meinzer* suggests a framework for analyzing the problem posed in the instant case. Both the intent of the trial judge and the ramifications of treating the finding of liability as a "final order" are to be considered. A bifurcation in which the damage phase must proceed after liability is found is not akin to a severance in which one separate cause of action is fully disposed of while others remain independently unresolved. The bifurcation of a single cause of action into liability and damages based on

---

**5.** *See* 42 Pa.C.S. § 702(b).

**6.** Superior Court also declined to hear the appeal as a controlling question of law appealable for the purpose of materially advancing the ultimate termination of the matter pursuant to 42 Pa.C.S. § 702(b).

the general principles summarized in § 402A of the Restatement (Second) of Torts does not constitute a severance, but allows for a pause in the proceeding after a jury finding of liability has been announced. To give that finding the status of a "final order" would result in the piecemeal determination of actions that case law has uniformly condemned.

Federal decisions addressing this issue lend support to the principle that the bifurcation of a single cause of action does not lead to an order worthy of appellate review. In *Clark Dietz & Assoc.-Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67 (5th Cir.1983), the mayor, city council and utility commission of Columbus, Ohio, all brought a tort action against Clark-Dietz and Basic Construction for damages resulting from the failure of a protective levee. In the first phase of a bifurcated trial, the district court held an 18 day evidentiary hearing concerning liability. It then issued a memorandum setting forth its findings of fact and conclusion of law holding Clark-Dietz liable on several issues. Following Clark-Dietz's appeal, the Fifth Circuit remanded the matter to the trial court stating "[a]n interlocutory appeal assuredly does not lie simply to determine the correctness of a judgment of liability." *Id.* at 68. The Ninth Circuit in *Hain Pure Food Co., Inc. v. Sona Food Products Co.*, 618 F.2d 521 (9th Cir.1980), quashed an appeal following the finding of liability alone in a trademark infringement action noting that "[b]ecause the determination of liability, alone, is not a final judgment under the circumstances of this case, this court does not have jurisdiction pursuant to 28 U.S.C. § 1291." [7] *Id.* at 522. In the context of a Black Lung benefits claim, the Seventh Circuit similarly opined, "[i]f a federal district court in an ordinary civil action decides that the defendant is liable to the plaintiff, but has not yet determined the amount of damages, there is no 'final decision' within the meaning of 28 U.S.C. § 1291." *Freeman United Coal Mine Company v. Director, Office*

**7.** 28 U.S.C. § 1291 states, in pertinent part, that "[t]he courts of appeals shall have jurisdiction of all final decisions of the district courts of the United States...."

*of Worker's Compensation,* 721 F.2d 629, 630 (7th Cir. 1983).

Judge Posner of the Seventh Circuit, faced with an appeal after the district court allowed a bank status as an unsecured creditor on a filed claim but before the bank had demonstrated a right to recover on the claim, sets forth the policy reasons against allowing piecemeal appellate review:

> The likelihood that the proceedings on remand will moot, or at least alter, the issues that would be raised on appeal from the liability determination, or will raise new issues for appeal and thus lead to multiple appeals if the order on liability is appealable, is too great to make an immediate appeal efficient.

*Matter of Fox,* 762 F.2d 54, 55 (7th Cir.1985).

These decisions emphasize that an interlocutory finding of liability in a bifurcated proceeding is not sufficient to warrant appellate review.

Apparently the decision to bifurcate the trial in the present case into liability and damage phases led to some confusion as to what the finding of liability entails.[8] When the bifurcation process is viewed only as a method to make a finding as to an element of the cause of action, and not a final determination as to the rights and liabilities between the parties, the trial judge should be free to set aside the finding of liability even after the damage portion of the proceeding. The policy goals furthered through bifurcation, *i.e.* encouraging settlements and allowing the parties to avoid the expense of gathering costly discovery on damages until a factfinder has determined liability exists, are left intact when the trial judge is free to grant a judgment n.o.v. or a new trial as to the entire proceeding, after the damage portion of the trial.

**8.** Under federal precedent, General Motors need not have filed posttrial motions following an interlocutory finding of liability. *See Warner v. Rossignol,* 513 F.2d 678, 684 n. 3 (1st Cir.1975) (court rejects argument that new trial motion with respect to liability had to be filed within ten days of finding of liability in bifurcated proceeding, motion should be filed after damages assessed).

■ The trial judge's power to grant a new trial on both liability and damages based upon testimony at the damage phase of a bifurcated proceeding answers appellants' somewhat awkward attempt to argue the issue in terms of inadmissible "after-acquired evidence." The Common Pleas order granting a new trial was based largely upon the damaging testimony of Dr. Arnold Sadwin at the damage phase of the proceedings. Appellants contend that such evidence may not be used to grant a new trial as to both liability and damages. Appellants' argument wrongfully assumes that the jury's finding of liability in a bifurcated proceeding is unassailable by the trial court following the damage phase. Our holding today, that a finding of liability in a bifurcated proceeding does not take on characteristics of a judgment or final order, allows the trial court to review the totality of the evidence in ruling on post-trial motions. When the two phases are viewed as two halves of a single proceeding, there can be no "after-acquired evidence."

## II.

■ The difficulties presented in this case stem from the trial court's initial election to bifurcate the trial. While we applaud efforts to streamline proceedings, the decision to bifurcate should only be made after the careful consideration of the trial judge. In determining whether to bifurcate a trial, the trial judge should be alert to the danger that evidence relevant to both issues may be offered at only one-half of the trial. This hazard necessitates the determination that the issues of liability and damages are totally independent prior to bifurcation. The Supreme Court of Washington has aptly summarized the problem:

It [bifurcation] should be carefully and cautiously applied and be utilized only in a case and at a juncture where informed judgment impels the court to conclude that application of the rule will manifestly promote convenience and/or actually avoid prejudice. Piecemeal litigation is not to be encouraged. Particularly is this so in the

field of personal injury litigation, where the issues of liability and damages are generally interwoven and the evidence bearing upon the respective issues is commingled and overlapping.

*Brown v. General Motors Corp.*, 67 Wash.2d 278, 282, 407 P.2d 461, 464 (1965) (citations omitted). *See also Hosie v. Chicago and North Western Railway Co.*, 282 F.2d 639, 643–44 (7th Cir.1960) ("It is almost certain that cases will come before the court where a question as to the injuries has an important bearing on the question of liability."), *cert. denied*, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961). The case now before us may be such a case. In it, evidence relevant to both issues was proffered at only one-half of the proceeding. Mindful of the requirement of Rule 213(b) that bifurcation should only be used "in furtherance of convenience or to avoid prejudice," the trial court's decision against bifurcation of the new trial is a reasonable exercise of its discretion in this respect.

## III.

■ Appellants also argue that the trial court raised the bifurcation issue *sua sponte* in granting appellee post-trial relief, violating the rule announced in *Tagnani v. Lew*, 493 Pa. 371, 372, 426 A.2d 595, 595 (1981) (court may not grant new trial on grounds not specifically requested). We have carefully reviewed the record and find no merit to appellants' contention. During oral argument on the post-trial motions, appellee vigorously argued for judgment n.o.v. and a new trial based upon the weight and sufficiency of all the evidence presented in both phases of the case. Reproduced Record at 542a–588a. In considering the post-trial motions before the court, the trial judge pointed to the fact that the bifurcation of the proceeding left the jury in the liability phase unaware of the injurious evidence offered in the damage phase. R.R. at 591a–592a. In a colloquy with the parties, he discussed the vexing problem created once evidence undermining liability was offered in the second half of the trial:

THE COURT: The issue that I have to decide, and neither of you have addressed it, is whether in a bifurcated case, after a verdict on liability, it becomes so clear to the Court, after the liability phase, and I am not saying that I have decided it, but assuming that the Court decides that the witnesses, upon which the plaintiff relies for a malfunction case are so incredible that it shouldn't have gone to the jury in the first place, and now because of what develops in the—

MR. O'NEILL: In the damage phase.

.        .        .        .        .

THE COURT: I am not raising the issue of whether it was proper to bifurcate it. I don't now for one minute say that it was improper. I am only raising the issue that ... because of what the testimony did develop in the damage phase, which shed some very important light on the question of the Stevensons' credibility, shouldn't that be taken into consideration by the Court in whether a new trial should be granted or not?

R.R. at 598a–600a.

The trial judge was not raising, *sua sponte*, the issue of bifurcation as a factor prejudicing the appellee's case. Rather, the trial judge voiced a concern regarding his ability to grant a new trial as to both liability and damages after the presentation of evidence, in the damage phase of a bifurcated trial, undermining the appellants' case. Recognizing the unusual issue posed by the post-trial motions in this case, the trial judge correctly resolved it and acted properly in granting appellee a new trial.

## IV.

■ Appellants' argument that the trial court raised the bifurcation problem *sua sponte* also challenges the propriety of the order granting a new trial on the merits. It is necessary to review the record to resolve this issue. However, our scope of review over the trial court's decision is severely limited. This Court has repeatedly emphasized that the granting of a new trial is an inherent power and

right of the trial court from time immemorial. *Thompson v. City of Philadelphia,* 507 Pa. 592, 598, 493 A.2d 669, 672 (1985); *Wylie v. Powaski,* 422 Pa. 285, 286, 220 A.2d 842, 842 (1966). An appellant shoulders a very heavy burden when attempting to demonstrate that the trial court abused its discretion in awarding a new trial. *Glaister v. Eazor Express, Inc.,* 390 Pa. 485, 487, 136 A.2d 97, 98 (1957); *Ravis v. Shehulskie,* 339 Pa. 161, 165–66, 14 A.2d 70, 72 (1940). It is the duty of an appellate court to give the utmost deference to the determination of the trial judge.

We have repeatedly said that we will not reverse the grant of a new trial, unless there was a clear abuse of discretion, or an error of law which controlled the outcome of the case: *Segriff v. Johnston,* 402 Pa. 109, 166 A.2d 496 (1960); *Bohner v. Eastern Express, Inc.,* 405 Pa. 463, 175 A.2d 864 (1961); *Feltovich v. Sharon,* 409 Pa. 314, 186 A.2d 247 (1962).

As stated in *Lenik Condemnation Case,* 404 Pa. 257, 172 A.2d 316 (1961), at 259: "One of the least assailable reasons for granting a new trial is the lower court's conviction that the verdict was against the weight of the evidence and that new process was dictated by the interests of justice. With reasons for this action given or appearing in the record, only a palpable abuse of discretion will cause us to overturn the court's action." In determining whether or not the grant of a new trial constituted an abuse of discretion, it is our duty to review the entire record: *Jones v. Williams,* 358 Pa. 559, 58 A.2d 57 (1948); *Evans v. Otis Elevator Co.,* 403 Pa. 13, 168 A.2d 573 (1961); *Feltovich v. Sharon, supra.*

*Thompson, supra,* 507 Pa. at 598–99, 493 A.2d at 672 (*quoting Nehrebecki v. Mull,* 412 Pa. 438, 439–40, 194 A.2d 890, 890–91 (1963)).

Sterile transcripts offer little insight into the dynamics of a case as "[t]here are many incidents of a trial, including the manner of its conduct, which the trial judge may feel are productive of prejudice, and which an appellate court, with merely the black and white pages of the record before

it, is in no position to comprehend." *Reese v. Pittsburgh Railways Co.*, 336 Pa. 299, 301, 9 A.2d 394, 395 (1939) (citations omitted).

To ascertain whether a trial court's decision constitutes a palpable abuse of discretion, an appellate court must "examine the record and assess the weight of the evidence; not, however, as the trial judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so finding plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury." *Thompson, supra,* 507 Pa. at 600, 493 A.2d at 673 (*quoting Exner v. Gangewere,* 397 Pa. 58, 60, 152 A.2d 458, 460 (1959)). The trial court has exercised its judicial discretion properly where there is support in the record for its determination.

We have carefully reviewed Judge Paul Chalfin's opinion and the record and find no abuse of discretion in his granting of a new trial. Appellants' product liability claim against appellee General Motors was predicated wholly upon circumstantial evidence. *See, e.g., MacDougall v. Ford Motor Co.*, 214 Pa.Superior Ct. 384, 257 A.2d 676 (1969). Appellants' case-in-chief was comprised solely of the testimony of Virginia Stevenson, Daniel Stevenson and their daughter, Valerie. Appellants offered no expert testimony on the existence of a defect giving rise to the accident. Under such circumstances, appellants' credibility is essential to the cause of action. Judge Chalfin, in his opinion, painstakingly noted those instances where the appellants' testimony contradicted their earlier deposition testimony and statements made immediately following the accident. Common Pleas slip op. at 5–7. Additionally, the trial court's opinion recites those points at which appellee's physical evidence refutes appellants' account of the accident. Common Pleas slip op. at 4–5. The opinion concludes:

> The evidence on which this Court relies heavily in granting a new trial was elicited during the damage phase of the case during the examination of Dr. Sadwin, a

well-qualified and experienced psychiatrist. It was Dr. Sadwin to whom the plaintiffs went for treatment following the accident. It was Dr. Sadwin to whom the plaintiffs would be expected to give the most honest and complete description of the accident. It was Dr. Sadwin who would have the best knowledge of the credibility or reliability of the plaintiffs. However, it was Dr. Sadwin who testified that the plaintiffs had memory problems and were not reliable historians, and, it was this testimony that was not presented to the jury which decided liability. Thus, given Dr. Sadwin's testimony and the many other examples of inconsistent testimony of the plaintiffs, this Court finds that the testimony of the plaintiffs was not credible and "that in many respects the testimony of the plaintiffs was colored to advance their own interest." (quoting *Gougher v. Hansler*, 388 Pa. [160] at 165 [130 A.2d 150] (1957)).

The necessity of a new trial based upon the incredibility of the plaintiffs' testimony is further highlighted when one considers the theory upon which plaintiff relied. As noted earlier plaintiffs' theory of liability was predicated on *Restatement (Second) of Torts* § 402A (1965), and plaintiffs proceeded to establish evidence of a "defective condition" circumstantially through the occurrence of a malfunction. In order to establish sufficient circumstantial evidence of a defective condition there must be an absence of reasonable secondary causes of the accident. Unfortunately for the plaintiffs, the only evidence as to the absence of secondary causes was their own incredible testimony. Thus, a new trial must be granted and the retrial should not be bifurcated.

Common Pleas slip op. at 10–11 (footnote omitted). On this record, we find no abuse of discretion in the granting of a new trial.

Accordingly, the order of Superior Court is affirmed.

ZAPPALA, J., files a concurring opinion.

LARSEN, J., files a dissenting opinion in which PAPADAKOS, J., joins.

ZAPPALA, Justice, concurring.

I concur in the result reached by the majority because the trial judge may review both the liability and damage verdicts in a bifurcated proceeding under Pa.R.C.P. 227.1 in one post-trial motion. Such determination then may be reversed only if the trial judge has abused his discretion. *Thompson v. City of Philadelphia*, 507 Pa. 592, 493 A.2d 669, (1985). However, I am compelled to write separately to emphasize that a liability verdict in a bifurcated trial does determine the cause of the plaintiff's injuries and is only reviewable by way of post-trial relief. To the extent that the majority holds that the jury's determination on liability makes no final determination "... as to the rights and liabilities between the parties ..." (Maj.Op. p. 421), I cannot agree.

LARSEN, Justice, dissenting.

I dissent.

Although I agree with the majority that a jury finding of liability in a bifurcated trial is not a verdict upon which final judgment can be entered or from which an appeal will lie and that a trial court may properly examine all of the evidence in ruling on post-trial motions filed after a different jury reaches a verdict on damages, I disagree that the trial court did not abuse its discretion in granting a new trial in this case.

The trial court granted a new trial on the basis of an issue not raised by appellee General Motors Corporation in its post-trial motions. The trial court, *sua sponte*, raised and discussed what effect the bifurcation had on the liability jury's ability to assess the plaintiffs-appellants' credibility in that that jury had not heard testimony concerning plaintiffs' credibility which was presented during the damage phase. R.R. 591a–593a. Concluding that the liability jury would have decided the credibility issue in favor of appellee had the case not been bifurcated, the trial court

granted appellee's motion for new trial *and* ordered that retrial not be bifurcated.[1]

Matters not raised in post-verdict motions may not be considered by a trial judge for a motion for a new trial.[2] *See Tagnani v. Lew,* 493 Pa. 371, 373, 426 A.2d 595, 595 (1981). *See also Dilliplaine v. Lehigh Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974).

I would, therefore, reverse the order of Superior Court and would direct that judgment be entered in accordance with the jury verdict.

PAPADAKOS, J., joins in this dissenting opinion.

1. The trial court stated:
   Since the jury which decided the liability phase of the case did not hear that testimony [the testimony of Dr. Sadwin that plaintiffs were not reliable historians], it is obvious that the jury did not hear all the evidence regarding plaintiffs' credibility, and the absence of this testimony, in all likelihood, affected the jury's finding of liability.
   Opinion and Order at 8–9 (Dec. 13, 1983).

2. Additionally, this issue was not argued by appellee during argument on its post-trial motions.