Batista v. Yellowbird Bus Co., Inc.

*Edward F. Chacker* and *Brian S. Chacker,* for appellants.

*John J. Snyder* and *James C. Haggerty,* for appellees Cowan Systems and Andrew Schultz.

*James L. Griffith* and *Edward J. McGinn Jr.,* for appellees Yellowbird Bus Co. and Kevin Talbert.

TERESHKO, *J.,* April 27, 2011—Plaintiffs appeal from this court's order of December 3, 2009, bifurcating the five (5) remaining cases of an action that originally involved more than forty (40) plaintiffs. This court ordered the five cases to be tried initially on liability, then separately on the damage claims of individual plaintiffs.

## FACTUAL BACKGROUND

Plaintiffs commenced this action following a motor vehicle accident on July 5, 2006, involving a tractor trailer

owned by defendant Cowan Systems, LLC and operated by defendant Andrew Schultz and a Yellowbird school bus operated by Yellowbird employee Kevin Talbert, Jr.. (Complaint, ¶¶8-13). On that date plaintiffs allege that both the tractor trailer and the Yellowbird bus attempted to move into the same lane and collided. (*Id.*). Plaintiffs contend that Talbert lost control of the bus as a result of the collision, swerving into the median and then back across both lanes of Northbound I-95 before the bus flipped over and landed on its side on the shoulder of the roadway. The Yellowbird school bus was carrying minor children returning from a camp field trip to the Aquarium in Baltimore, Maryland. Several of the children received various degrees of injury as a result of the accident. (*Id.*). On June 11, 2007, plaintiff Carmen Batista individually and as parent and natural guardian of Elias Torres and Lisandra Perez commenced their action by filing their complaint alleging counts of negligent operation of a motor vehicle against defendants Talbert and Schultz and counts of negligent entrustment against defendants Yellowbird and Cowan. In addition, over fifteen (15) separate lawsuits were filed by approximately forty (40) different plaintiffs. *Id.* ¶ 2.

On September 18, 2007, defendants, Cowan Systems, LLC and Andrew Schultz filed a motion to consolidate the cases for purposes of discovery and trial, and pursuant to orders dated both October 16, 2007 and April 14, 2008, the individual cases were consolidated. The Honorable Sandra Mazer Moss stated in her April 14, 2008 consolidation order

that the court would fully consider all issues pertaining to trial consolidation after the close of discovery.

On September 29, 2009, this court issued an order removing five cases[1] from the existing consolidation and consolidating them separately under the lead case of *Batista, et al. v. Yellowbird Bus Company, Inc., et al.* because the remaining matters settled. In addition, on November 23, 2009, this court granted motions for summary judgment against plaintiffs who were not passengers on the incident bus. The remaining minor plaintiffs are: Elias Torres, Josue Rios, Juan Karlos Martinez, Neena Meeker and Susan Pena.

On October 22, 2009, defendants Cowan Systems, LLC and Andrew Schultz filed a motion with this court to issue a Case Management order and requesting that the five cases that were consolidated pursuant to the September 29, 2009 order be bifurcated and tried initially on liability then separately on the damage claims of individual plaintiffs. (Exhibit "D" to plaintiffs' motion to Consolidate). Plaintiffs filed their response on November 6, 2009. On December 3, 2009, this court entered an order establishing case management deadlines and ordering that the remaining cases "be bifurcated and tried initially on liability....following the consolidated liability trial, the

---

1. Batista, et al. vs. Yellowbird Bus Company, Inc., et al., 070601319; Meeker, et al. vs. Yellowbird Bus Company, Inc., et al., 080700179; Rosado, et al. vs. Yellowbird Bus Company, Inc., et al., 070602690; Cepeda, et al. . vs. Yellowbird Bus Company, Inc., et al., 070603591; and Lopez, et al. vs. Yellowbird Bus Company, Inc., et al., 070701409.

damages claims of the individual plaintiffs in each case are to be tried separately..." (Exhibit "H" to plaintiffs' motion to consolidate).

Plaintiffs did not file a motion for reconsideration of the December 3rd order, but rather filed a motion to consolidate on July 6, 2010, seven months after the order was entered. This court denied the motion by order dated August 10, 2010. This order was interlocutory. On August 17, 2010, plaintiffs filed a motion to amend the court's August 10th order to include language granting permission to pursue an interlocutory appeal. This court denied the request by order dated September 13, 2010.

Subsequently, on September 23, 2010 plaintiffs filed a petition for review with the superior court of Pennsylvania seeking immediate review of the this court's orders of August 10, 2010 and September 13, 2010 denying plaintiffs' motion to consolidate and motion to amend to grant permission to pursue an interlocutory appeal. On November 8, 2010, the superior court granted plaintiffs' petition for review and permitted plaintiffs to proceed with an appeal of the August 10, 2010 order.

Plaintiffs filed their notice of appeal on September 23, 2010. Plaintiffs then filed their concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) on November 23, 2010.

The sole issue to be addressed on appeal is whether this court abused its discretion in bifurcating liability and damages and ordering separate damages trials for each

of the five plaintiffs in order avoid confusion of liability, causation and damages issues presented on behalf of multiple plaintiffs, to prevent unfair prejudice to the parties and to avoid undue influence in jury deliberations.

## LEGAL ANALYSIS

"The decision whether to bifurcate is entrusted to the sound discretion of the trial court, which is in the best position to evaluate the necessity for such measures." *Gallagher v. Pa. Liquor Control Board*, 584 Pa. 362, 374, 883 A.2d 550, 557 (2005). "A court decision to bifurcate will not be disturbed on appeal absent an abuse of discretion." *Coleman v. Philadelphia Newspapers, Inc.*, 391 (Pa. Super. 140, 146, 570 A.2d 552, 555 (1990)). "[B]ifurcation is strongly encouraged and represents a reasonable exercise of discretion where the separation of issues facilitates the orderly presentation of evidence and judicial economy, or avoids prejudice." *Id.* at 146-47, 555 (internal citations omitted). The decision to bifurcate has been affirmed on appeal where there is a risk that sympathy occasioned by the severity of plaintiffs' injuries could taint the jury's deliberations. *Ptak v. Masontown Men's Softball League,* 414 Pa. Super. 425, 430, 607 A.2d 297, 300 (1992). See also *Santarlas v. Leaseway Motorcar Transp. Co.*, 456 (Pa. Super. 34, 689 A.2d 311 (1997)).

Pennsylvania Rule of Civil Procedure 213 establishes the right of the court to bifurcate actions or issues. Pa. R.C.P. 213(b) states:

The court, in furtherance of convenience or to avoid

prejudice, may, on its own motion or on motion of any party, order a separate trial of any cause of action, claim, or counterclaim, set-off, or cross-suit, or of any separate issue, or of any number of causes of action, claims, counterclaims, set-offs, cross-suits, or issues.

(emphasis added).

In assessing the advisability of bifurcation, the trial court is required to consider the issues raised and the evidence to be presented to determine whether or not liability and damages are interwoven to such an extent that bifurcation would be improper. *Ptak v. Masontown Men's Softball League,* 414 (Pa. Super. 425, 429, 607 A.2d 297, 300 (1992)). There are numerous policy considerations that support bifurcating liability and damages in personal injury cases, including avoiding the expense of preparing for a trial on damages prior to a finding of liability and promoting settlement. *Stevenson v. General Motors Corp.,* 513 Pa. 411, 415-16, 521 A.2d 413, 415 (1987).

In this case, bifurcating liability and damages and holding separate damages trials will prevent confusion of the jury and any unfair prejudice by: 1) allowing the jury to remain focused on the liability aspect of the case and the multiple issues and parties involved; 2) preventing sympathy for plaintiffs' injuries to unduly influence jury deliberations on liability; and 3) preventing evidence from the more severely injured plaintiffs' cases from improperly influencing and inflating damages of other plaintiffs with less severe injuries and conversely

preventing the damages from the lesser injured plaintiffs to diminish the value of the damages of the more severely injured plaintiffs.

While plaintiffs argue that liability is a "foregone conclusion," the jury nevertheless will be called upon to determine causal negligence, and if the jury finds more than one of the four defendants was negligent, the proper apportionment of liability must be determined. As plaintiffs further point out in their pre-trial memorandum, the jury will have to consider a number of sub-issues in determining whether defendants Talbert and Schultz (drivers) are liable, including whether defendant Talbert was illegally operating a school bus across state lines or improperly using his cell phone at the time of the accident. In deliberating the liability of defendant drivers, the jury will be called upon to evaluate the credibility and conclusions of accident reconstruction experts. Additionally, the jury will have to decide whether the defendant drivers' employers, Cowan Systems,. LLC and Yellowbird Bus Company, Inc., are liable under theories of respondent superior or negligent entrustment.

The fact that there are four defendants and various sub-issues that must be resolved as to each, in addition to multiple theories of liability put forth by plaintiffs, it would be difficult for a jury to hear evidence on and decide causation and damages currently with liability. Subjecting jurors to the complex liability aspects of this case at the same time they are hearing evidence of injuries to minor

plaintiffs would result in confusion and the potential for prejudice.

If a jury finds that one or more defendants are not liable, judicial economy will be promoted by sparing those defendants the time and expense of preparing for separate damages trials.

Thus, a bifurcated trial will allow the jury to consider the complicated issue of liability and causal negligence independently, minimizing the potential for confusion or prejudice, while promoting judicial economy.

In addition to the confusion that will result if the jury is required to determine liability, causation and damages during a single trial, the circumstances surrounding plaintiffs' injuries present a substantial risk of unfair prejudice because plaintiffs are young children who were involved in a traumatic accident. If liability and damages are presented in a single trial, the jury may be swayed to find defendants liable as a result of jurors' sympathy for injured children (plaintiffs). The potential sympathy occasioned by this accident involving injuries to minors may also influence the jury's decisions on assessing the damages for each minor plaintiff.

According to plaintiffs' pretrial memorandum, the damages sustained by the five minor plaintiffs in the accident vary greatly in terms of severity. This creates the potential that the evidence of the more severely injured plaintiffs could unduly influence the jury assessment of value for the less severe injuries of the others and vice-

versa.

Plaintiff, Elias Torres suffered the most severe injuries and is demanding $9.5 million in damages. As a result of the accident, plaintiff Torres was diagnosed with nerve injury to his dominant right arm, internal injury to his liver, a laceration to his head requiring 14 staples to close and a fracture of his left scapula. His hospital stay lasted approximately one month, during which time he underwent six procedures. Plaintiff Torres also underwent several procedures following his hospital stay to attempt to revise the disfigurement of his back, shoulder, arms and leg. In addition, plaintiff Torres has allegedly suffered emotional and psychological problems as a result of the accident for which he has undergone both inpatient and outpatient treatment.

Josue Rios sustained severe injury to his left elbow as a result of the accident. Testing revealed the presence of foreign bodies in the elbow further resulting in osteopmyeolitis. Rios was required to undergo irrigation and debridement of the elbow to remove the foreign bodies. He still has pain in the elbow and noticeable scarring. Additionally, he had surgery to decompress the ulnar nerve, which was causing him persistent pain. Rios also suffered a concussion in the accident and was diagnosed with post concussive headaches. Furthermore, Rios was diagnosed with post traumatic stress disorder, continuing depression and suicidal ideation that he attributes to this accident. Rios has outstanding medical bills, as well as

recommendations for future medical care and allegations of future lost earning capacity. Rios's demand for his injuries is $2.5 million dollars.

Conversely, plaintiff Neena Meeker is demanding $165,000 in damages as a result of whiplash associate disorder, post-traumatic onset cephalgia, and cervical, thoracic and lumbar strain and sprain allegedly sustained in the accident. Susan Pena is demanding $275,000 for post-concussive syndrome, headaches and left ankle paint attributed to tarsal coalition and calcaneonavicular. Juan Karlos Martinez is demanding $750, 000 for a fracture of the left arm and injuries to the left shoulder with a surgical recommendation to stabilize the left shoulder.

The concern is that a jury could either maximize the recovery based on the severe injuries suffered by plaintiff Torres and Rios or undervalue the damages for all plaintiffs after hearing injury evidence of Neena Meeker, Susan Pena or Juan Karlos Martinez. An additional concern with five plaintiffs and numerous causation and damages experts testifying on behalf of individual plaintiffs is the potential risk that jurors could confuse evidence of plaintiffs' injuries resulting in an improper award. Requiring separate damages trials for the individual plaintiffs following a finding of liability will prevent unfair prejudice and ensure that each plaintiff is awarded damages commensurate with the injuries he or she sustained in the accident.

Bifurcation is an appropriate choice in this case because it would reduce the risk of unfair prejudice and

confusion and promote judicial economy. The issues of liability and damages are not so intertwined in this case that bifurcation would be a waste of time and judicial resources.

## CONCLUSION

For the foregoing reasons, this court respectfully requests that its decision to bifurcate liability and damages and hold separate damages trials for each of the five plaintiffs be affirmed.