Argued September 9, reversed and remanded October 17, 1974

REINAN, *Appellant, v.* PACIFIC MOTOR
TRUCKING COMPANY, *Respondent.*

527 P2d 256

*Donald A. Buss,* Portland, argued the cause for
appellant. With him on the briefs were Buss, Leich-
ner, Lindstedt, Barker & Buono, Portland.

*James H. Clarke,* Portland, argued the cause for
respondent. With him on the brief were Dezendorf,

Spears, Lubersky & Campbell and Laurence F. Janssen, Portland.

Before O'CONNELL, Chief Justice, and MCALLISTER, HOLMAN, TONGUE, HOWELL and SLOPER, Justices.

SLOPER, J. (Pro Tempore)

This is an action for personal injuries sustained in an automobile-truck collision in which plaintiff's car was struck by defendant's truck as it was passing on the truck's right-hand side and as the car was overtaking and passing the truck. At the time of the impact defendant's truck was negotiating a right-hand turn into a private driveway. The accident occurred on Northwest Nicholai Street, a highly industrialized area, in Portland, Oregon. The case was tried before a jury which returned a verdict for plaintiff in the sum of $1,500. Plaintiff appeals from the judgment, contending: that the court erred in admitting evidence of collateral benefits received by plaintiff during his disability; that the court erred in failing to admit evidence of an alleged admission against the interest of the corporate defendant; and that the court erred in failing to grant plaintiff's motion to strike from defendant's affirmative defense an allegation of plaintiff's failure to keep a proper lookout, an allegation of traveling at an excessive rate of speed, and an allegation of plaintiff's failure to keep his vehicle under proper control.

We must determine under what circumstances, if at all, defendant in a tort action may introduce evidence that plaintiff received collateral benefits compensating him for time lost from work as the result of an alleged injury. The disability income which plain-

tiff received consisted of 12 monthly payments of $500 each for a total of $6,000 from the Modern Woodmen of America, and 26 weekly payments of $50 each for a total of $1,300 from a Teamster Health and Welfare policy. In addition, for nine months preceding the time of trial plaintiff was enrolled as a student at Mt. Hood Community College and was drawing GI benefits of $315 per month for a total of $2,835. This evidence concerning plaintiff's GI benefits was introduced by plaintiff in his case in chief.

An exhaustive Annotation in 47 ALR3d 234 (1973), which supersedes an Annotation in 88 ALR2d 483 (1963), reveals that the courts in this country are hopelessly divided on the question of admissibility of evidence that an injured plaintiff received benefits from a collateral source when offered to prove malingering, exaggeration of injuries, or motivation to extend the period of disability.

■ Some courts have held that the prejudicial effect of evidence of collateral source benefits so far outweighs its probative value upon the issue of malingering, which is the issue in this case, that they have applied a strict exclusionary rule and regard the evidence to be inadmissible even when offered for a very limited purpose and hold that its admission constitutes an abuse of the trial court's discretion and is error. See *Louisville & N. R. Co. v. Utz,* 299 Ky 765, 187 SW2d 439 (1945); *Vest v. Gay,* 275 Ala 286, 154 S2d 297 (1963); *Moyer v. Merrick,* 155 Colo 73, 392 P2d 653 (1964); *Richmond County Hospital Authority v. Haynes,* 121 Ga App 537, 174 SE2d 364 (1970).

Although earlier federal court cases held that evidence of collateral source benefits from Railroad Retirement Board in a FELA action was proper on

issue of malingering, *Reiner v. Northern Pacific Terminal Co. of Oregon,* 259 F2d 438 (9th Cir 1958), and *Page v. St. Louis Southwestern Railway Company,* 312 F2d 84 (5th Cir 1963), the United States Supreme Court in *Eichel v. New York Central R. Co.,* 375 US 253, 84 S Ct 316, 11 L Ed2d 307 (1963), in reversing a decision of the Court of Appeals for the Second Circuit, which held that the exclusion of such evidence was error, stated:

"* * * In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension. * * *. It has long been recognized that evidence showing that the defendant is insured creates a substantial likelihood of misuse. Similarly, we must recognize that petitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact. * * *." 375 US at 255.

This rationale was applied in a later case, *Caughman v. Washington Terminal Company,* 120 App DC 217, 345 F2d 434 (1965), in which that court held that evidence admitted over objection that plaintiff had received some benefits from the Railroad Retirement Board and at time of trial was receiving public assistance constituted reversible error.

At the other end of the judicial spectrum are those courts that have adopted a liberal view that evidence of the receipt by plaintiff of collateral source benefits is, in and of itself of sufficient probative value to render it admissible for the purpose of demonstrating a disposition to malinger. See *Wentworth v. Butler,* 134 Minn 382, 159 NW 828 (1916); *Perry v. Public*

*Service Coordinated Transport,* 136 NJL 398, 56 A2d 617 (1948); *Ridilla v. Kerns,* 155 A2d 517 (Mun Ct App DC 1959); *Lewis v. Fidelity & Casualty Company of New York,* 230 S2d 636 (La App 1970). The *Perry* case was criticized in another New Jersey case, *Clark v. Piccillo,* 75 NJ Super 123, 182 A2d 381 (1962), which suggested that the rule in *Perry* ought to be discarded.

In between these two views are those courts which have, instead, in decisions interpreting a multitude of different factual situations, held, that the admissibility of such evidence is within the discretion of the trial judge. The confusion in these reported cases is a result of the various and differing attitudes that appellate courts have taken of the extent of the trial judge's discretion. These cases recognize that plaintiff's receipt of collateral benefits does not, in and of itself, have sufficient probative value and that the prejudicial effect of such evidence so far outweighs its probative value upon the issue of malingering or of the disability extent of plaintiff's injury that the evidence of collateral source benefits is to be admitted only if there is other evidence, independent of the collateral benefits, which would give the triers of fact a reasonable and substantial independent basis for believing that plaintiff is a malingerer or is exaggerating the nature and extent of his injuries. *Congdon v. Howe Scale Co.,* 66 Vt 255, 29 A 253 (1894); *McElwain v. Capotosto,* 332 Mass 1, 122 NE2d 901 (1954); *Kainer v. Walker,* 377 SW2d 613 (Tex 1964); *Jackson v. Sabuco,* 21 Mich App 430, 175 NW2d 532 (1970); *Hrnjak v. Graymar, Inc.,* 4 Cal3d 725, 94 Cal Rptr 623, 484 P2d 599, 47 ALR3d 224 (1971); *Bookbinder v. Rotondo,* 109 RI 346, 285 A2d 387 (1972).

We recognize that although some courts have come to a contrary conclusion, we believe that the better

reasoned decisions and those that are supported by common sense and logic and which will in the long run best effect the search for truth in the trial of personal injury actions, without unduly restricting the defense and while guaranteeing a nonprejudicial evidentiary framework, are those previously first referred to. The salutary policy underlying the collateral source rule is simply that if an injured party received some compensation from a source wholly independent of the tortfeasor, such compensation should not be deducted from what he might otherwise recover from the tortfeasor. The evidentiary consequence of this rule is that proof of such payments is generally regarded as inadmissible in view of its potential misuse by the jury.

An adherence to the strict exclusionary rule in this case not only is supported by six prior decisions of this court, but by removing what could be unnecessary, complex secondary issues which tend to unduly prolong the trial of cases. The prior decisions of this court which have uniformly and without exception applied the exclusionary rule are: *Cary v. Burris,* 169 Or 24, 127 P2d 126 (1942); *French v. Christner,* 173 Or 158, 135 P2d 464, 143 P2d 674 (1944); *Peterson v. State Farm Ins. Co.,* 238 Or 106, 114, 393 P2d 651 (1964); *Black v. Nelson,* 246 Or 161, 424 P2d 251 (1967); *Dickson v. Hollinger,* 262 Or 113, 115, 496 P2d 912 (1972); *Jenks v. Larimer,* 268 Or 37, 518 P2d 1301 (1974).

While the factual situation and particular issues in these reported cases are different from the issue in this case, the common thread that binds them together is the fear so clearly expressed in *Eichel v. New York Central R. Co., supra* (375 US 253), that the likelihood of misuse by the jury clearly outweighs the value of

this type of evidence and the likelihood of an impermissible prejudicial impact on the jury's deliberations cannot be discounted.

■ For these reasons we conclude that the court erred in admitting such evidence and that such error is reversible.

We do not find merit in either of plaintiff's two other assignments of error and find that the trial court was correct in sustaining defendant's objection to plaintiff's Exhibit 32 and in refusing to grant plaintiff's motion to strike from defendant's affirmative defense the allegation of failure to keep a proper lookout, traveling at an excessive rate of speed under the conditions and circumstances and in failing to keep his vehicle under proper control, there having been sufficient evidence on these allegations to make out a jury question.

The judgment of the trial court is reversed and remanded for a new trial.