883 A.2d 550

John GALLAGHER

v.

PENNSYLVANIA LIQUOR CONTROL BOARD, World Transportation, Inc., Envoy Warehouse, Inc. and Trans Freight Systems, Inc.

Appeal of Trans Freight Systems, Inc.

Supreme Court of Pennsylvania.

Argued March 9, 2005.

Decided Sept. 28, 2005.

Joel P. Fishbein, Louis Evan Bricklin, Moira Clare Duggan, Philadelphia, for Trans Freight Systems, Inc.

Dean F. Murtagh, Kim R. Plouffe, Philadelphia, for John Gallagher.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

### *OPINION*

Justice SAYLOR.

Appeal was allowed to consider whether a trial court presiding over a civil negligence case erred in refusing to bifurcate trial to avoid exposing jurors to information from which it could be inferred that the plaintiff may have received some compensation for his injuries from a collateral source.

In November of 1999, while working as an inventory picker in a warehouse operated by the Pennsylvania Liquor Control Board (the "PLCB"), Appellee, John Gallagher, fell through an opening in an elevated walkway. He later commenced a negligence action against the PLCB; World Transportation, Inc., a logistical company that provided distribution and warehousing support to the PLCB; Appellant, Trans Freight Systems, Inc., which was also involved in the warehouse operations and which was World Transportation's parent corporation; and others. Among other injuries, Appellee claimed to have suffered a disabling brain injury.

World Transportation and Appellant each asserted that it was Appellee's employer, and therefore, was immune from civil suit in the courts of law under the employer-immunity provisions of the Pennsylvania Workers' Compensation Act, 77 P.S. §§ 1–1041, 2501–2626. *See* 77 P.S. § 481. Appellee made a pre-trial request pursuant to Pennsylvania Rule of Civil Procedure 213(b), styled as a motion *in limine*, to have the question of which entity was his employer and the remaining trial issues bifurcated and otherwise to prohibit the mention of workers' compensation during the proposed, separate

general liability and damages proceedings. Appellant acknowledged that the collateral source rule precludes references to other sources of recovery that are deemed irrelevant at trial, in order to avoid the possibility that an improper inference by jurors of a double recovery on the plaintiff's part might diminish due and proper damages which would otherwise be assessed against the tortfeasor. *See, e.g., Lobalzo v. Varoli,* 409 Pa. 15, 21, 185 A.2d 557, 561(1962). Appellant contended, however, that such collateral source information is admissible for limited purposes where it has specific relevance to a liability issue in a civil case. In this regard, Appellant posited that its payment of workers' compensation premiums on Appellee's behalf tended to show that it was, in fact, Appellee's employer, and thus, not a proper party to the action. The trial court agreed with Appellant's position on this point and denied relief on the motion, but with the proviso that the "parties may mention workers' compensation only to show that premiums were paid on behalf of plaintiff." *See* Reproduced Record ("R.R."), at 286a; *accord* R.R., at 291a (reflecting the trial court's admonishment to counsel that "any mention of a collateral source would be barred, any payments").

Despite the trial court's ruling, in his opening statement, Appellant's counsel made specific reference to Appellee's receipt of workers' compensation benefits, as follows:

[H]ow will we show you that Trans Freight Systems was in fact the employer under the law of John Gallagher? ... Workers compensation benefits. How did Mr. Gallagher receive workers compensation benefits after this incident occurred? Trans Freight Systems paid the workers compensation benefits.

R.R., at 308a–309a. Appellee's counsel did not assert a contemporaneous objection; however, after the jury retired for the day, the trial judge spoke with counsel and criticized the remark of Appellant's counsel as a violation of his ruling, as follows:

The Court: ... [T]here was a comment in [Appellant's counsel's] opening regarding workers' comp benefits. My

ruling was only that your client or anybody could mention that they paid premiums on his behalf. It had nothing to do with him getting benefits. If you misunderstood—

[Appellant's Counsel]: I did. I apologize, Your Honor.

The Court: He was carried on the books as an employee and they made payments for premiums. But that is it.

[Appellant's Counsel]: Okay. I apologize, Your Honor, if I misunderstood your ruling.

*See* R.R., at 322a–323a.

Prior to the resumption of the trial the next day, Appellee's counsel expressed continuing concern regarding the effect of the opening remarks, and the trial court indicated its own discomfort in light of the recent decision of the Superior Court in *Nigra v. Walsh,* 797 A.2d 353 (Pa.Super.2002) (awarding a new trial on the basis that a defendant/motorist violated the collateral source rule by suggesting to the jury that the plaintiff/passenger was receiving federal disability benefits, and because it was impossible to determine the effect of such violation on the verdict). For this reason, the court granted Appellee's request to bar any and all references to workers' compensation, including premium payments. *See* R.R., at 337a–338a (reflecting the trial court's indication "I am very happy to just eliminate any issue with respect to the premiums, with respect to the benefits[;] [y]ou will have to prove employment another way"). The court subsequently stated to the jurors:

Folks, I forgot to mention before we started. In one of the opening statements yesterday, there was some mention of workers comp benefits. Please disregard that. That has no place in this case and should not in any way be considered by you in your deciding this case.

R.R., at 410a–411a.

Nonetheless, the subject of workers' compensation resurfaced during the cross-examination of Appellee's father, who was asked by Appellant's counsel about his son having "had several prior workers' compensation or work related injuries."

R.R., at 425a. Appellee's counsel objected and moved for a mistrial in an interchange that proceeded as follows:

> [Appellee's Counsel]: Motion for [a mistrial], Your Honor, reluctantly. Even if we didn't have the issues in this case that we have related to employment, in the limited rulings you made about allowing information about workers compensation premiums.

> The Court: That's changed.

> [Appellee's Counsel]: I understand that. We're still, I think, entitled to a [mistrial].

> My recollection is on Monday after opening you once again said or you said, defense counsel not to mention workers compensation benefits. That was not the scope of your ruling. We now have workers compensation coming in again, and it was phrased as other or additional, I forgot which words preceded workers compensation claims. I reluctantly, believe me, very reluctantly, I move for a [mistrial].

> [Appellant's Counsel]: Your Honor, the question was, it was immediately rephrased. It was a prior work related injury.

> The Court: No. No. That's not what you said. You used the term workers compensation.

> [Appellant's Counsel]: Your Honor, that was done—

> The Court: Was this another mistake?

> [Appellant's Counsel]: Your Honor, that was done in error. I indicated immediately, I rephrased it to say work related injury. I don't think this is an indication that a [mistrial] is appropriate. Clearly, it was immediately rephrased and it was in no way altering the facts of this case. And to address the issue of a [mistrial] is really, I think, not appropriate at this juncture.

> The Court: Your comment was not appropriate. You have to watch what you're saying.

R.R., at 428a–429a, 456a–57a; *see also* R.R., at 425 (reflecting counsel's initial objection). The trial court denied the mistrial motion.

Later in the trial, apparently acting *sua sponte*, the trial court reconsidered its ruling barring the admission of evidence of workers' compensation premium payments made by Appellant. *See* R.R., at 415a. At this juncture, the court indicated:

I think I was too hasty in precluding mention of the payment of premiums. So I am going to reverse myself on that. But it's only the payment of premiums.

[Appellant's Counsel]: Correct, Your Honor.

The Court: I just think that is an element that has to be part of the evidence in this case. My original ruling was that it could come in. I think I overreacted on that. I will let that in.

R.R., at 455a–456a. The court thus permitted Appellant's former vice president of operations to testify that Appellant had in fact paid the workers' compensation premiums for employees at the PLCB warehouse facility. *See* R.R., at 571a. On Appellee's request, the trial court instructed the jurors:

Folks, I do want to remind you that you have heard the term workers compensation. That has nothing to do with any damage which may or may not be awarded by you in this case. You are to put that out of your mind. It is being introduced only on the issue of who employed Mr. Gallagher.

R.R., at 571a.

After the close of the evidence, World Transportation moved for a directed verdict on the employer-immunity ground. Counsel for Appellant and Appellee ultimately agreed that the trial court had the authority to decide the issue, *see* R.R., at 626a, and the court ruled that World Transportation was, and Appellant was not, Appellee's employer. *See* R.R., at 641a–642a.[1] The remaining issues were submitted to the jury, which returned a verdict for Appellee in the amount of $150,000, finding that Appellant and the PLCB each bore 40

---

1. In this regard, the Court relied on the fact that World Transportation maintained the contract relative to logistical operations at the warehouse with the PLCB; the relevant licenses necessary to carry out the contract; and actual, day-to-day control over the employees. *See* R.R., at 641a.

percent responsibility for the causal negligence, and allocating 20 percent of the responsibility to Appellee.

Appellee filed post-trial motions,[2] asserting, *inter alia*, that the trial court erred in failing to bifurcate adjudication of the employer identification question and the other trial issues, failing to grant a mistrial after Appellant's counsel referred to Appellee's other or additional workers' compensation claims, and allowing Appellant's counsel to make other references to workers' compensation (presumably the remark in his opening statement) in the trial.

The trial court denied relief, reiterating its position that the evidence of premium payments was relevant to the employer identification issue, and thus, the decision whether to admit it, and whether to bifurcate, was committed to its sound discretion. In this regard, the court indicated that, on balancing considerations of judicial economy and fairness, it had concluded that bifurcation and/or exclusion was unnecessary. The court recognized that the evidentiary limitation couched as the collateral source rule derives from the substantive doctrine of damages law prescribing that payments from a collateral source do not diminish the damages otherwise recoverable from the tortfeasor. *See id.* at 6 (citing *Johnson v. Beane*, 541 Pa. 449, 664 A.2d 96, 100 (1995));[3] *accord Beechwoods Flying Service, Inc. v. Al Hamilton Contracting Corp.*, 504 Pa. 618, 625, 476 A.2d 350, 353 (1984) (explaining that the collateral source rule was "intended to prevent a wrongdoer from taking advantage of the fortuitous existence of a collateral remedy"). The court, however, distinguished decisions in which collateral source references were absolutely proscribed on the ground that the reviewing courts had discerned no nexus between the collateral source recovery and relevant liability issues in those

---

**2.** Appellant and the PLCB also filed post-trial motions. Appellant, however, did not pursue the issues that it raised in such motion on appeal, and the PLCB withdrew its claims for relief after reaching a settlement with Appellee.

**3.** Parenthetically, via the Medical Care Availability and Reduction of Error Act, Act of March 20, 2002, P.L. 154, No. 13, the General Assembly has negated the substantive collateral source doctrine in medical professional liability actions. *See* 40 P.S. § 1303.508.

cases; whereas, in the present case, the workers' compensation premium payments were in fact relevant to the contested question of which defendant employed Appellee. The trial court noted that it had crafted its ruling narrowly to bar any discussion of actual benefits payment from the evidence, thereby ameliorating the potential for jury confusion with which the decisional law was concerned. Moreover, it found that its cautionary and remedial instructions to the jurors served to alleviate undue prejudice.

Upon the resolution of the post-trial motions, the verdict was molded to reflect an adjustment relative to the component attributed to Appellee's negligence, as well as the addition of delay damages, and judgment was entered in favor of Appellee and against Appellant in the amount of $122,412.73.

On Appellee's subsequent appeal from such judgment, the Superior Court reversed in a divided, memorandum decision, holding that the trial court abused its discretion by allowing collateral source evidence to infect the liability and damages phase of the trial, the error caused prejudice, and a new trial was due. *See Gallagher v. PLCB*, No. 3209 EDA 2002, *slip op.* at 7, 841 A.2d 582 (Pa.Super.Nov.13, 2003). The majority decision centered on the first two challenges raised by Appellee, in which he alleged that the trial court erred in denying his bifurcation motion.[4] In addressing bifurcation, the majority highlighted the prior decisions focusing on the general irrelevancy of collateral source payments to the issues in a civil case and manifesting concern over unwarranted conclusions on the part of jurors. *See id.* at 5–6 (citing, for example, *Boudwin v. Yellow Cab Co.*, 410 Pa. 31, 188 A.2d 259 (1963)

---

4. Those two issues were framed as follows:

Whether the trial court erred as a matter of law in denying Plaintiff's Motion *in Limine* for bifurcation/severance of the employer issue particularly where the likelihood that payment or receipt of workers compensation benefits would be injected into the case.

Whether the trial court erred as a matter of law in denying Plaintiff's Motion *in Limine* to preclude evidence of receipt/payment of workers compensation benefits and in allowing defense counsel to ask about receipt of such benefits and payment of workers compensation benefits and premiums.

*Gallagher, slip op.* at 4.

(plurality) ("[A] tortfeasor may not ride to immunity from his wrong on the back of worker's compensation paid by someone else.")). According to the majority,

> The failure to separate the issue relating to the identify of the employer from liability necessarily allowed evidence of workers' compensation insurance coverage into the jury's collective mind. The trial court's cautionary instruction to the jury and explanation in its opinion that workers' compensation coverage was admitted solely for purposes of identifying the employer illustrates the initial error committed—had the court bifurcated the trial, there would have been no need to caution the jury as to the purpose of the workers' compensation insurance evidence.

*Gallagher, slip op.* at 6.

Although the Superior Court majority acknowledged the trial court's efforts to narrowly constrain the presentation of evidence touching on workers' compensation, it emphasized that the jurors were nevertheless subsequently informed of the fact of collateral source payments. *Id.* at 7. The majority described the discerned violation of the collateral source rule as "the residual error of the trial court's refusal to bifurcate the trial" and concluded that, because the testimony that it found to have been improperly admitted may have affected the verdict, the appropriate remedy was a new trial. *Id.* at 7 (quoting *Nigra,* 797 A.2d at 356).

Judge Beck authored the dissenting opinion, in which she observed that evidence of compensation from collateral sources has routinely been permitted to establish material facts or for other evidentiary purposes that are not directly related to the plaintiff's recovery, and generally can be accomplished without mention of actual payment. *See Gallagher, slip op.* at 1 (Beck, J., dissenting) (citing *Beechwoods Flying Service,* 504 Pa. at 623–24, 476 A.2d at 353 (holding that evidence of the procurement by a plaintiff of insurance against property damage was admissible in bailment case where it related to an element of the bailment contract); *Capozi v. Hearst Pub. Co.,* 371 Pa. 503, 92 A.2d 177 (1952) (holding that evidence of a defendant's maintenance of liability insurance,

although usually irrelevant and prejudicial, may be admitted into evidence where relevance can be established)). Judge Beck reasoned that, in such instances, the probative value of admitting such evidence may be deemed to outweigh any prejudice to the plaintiff. *See id.* at 2. For this reason, and in light of the trial court's narrowly crafted ruling on admissibility and associated admonitions to the jurors, Judge Beck would have credited the court's assessment of relevance, as well as its discretionary decision to deny bifurcation based on its balancing of the interests involved. *See id.* at 2–3.

This Court allowed appeal, limited to the issue of:

Applying the standards for appellate review set forth in *Harman v. Borah,* 562 Pa. 455, 756 A.2d 1116 (2000), and considering the scope of a trial court's discretion under the Pennsylvania Rules of Evidence, did the Superior Court err in reversing the trial court's denial of Gallagher's motion for a new trial based on its conclusion that the collateral source rule had been violated and without consideration of actual prejudice, when the evidence of payments from a collateral source was relevant to the jury's determination as to which of two defendants was Gallagher's employer and the trial court gave a cautionary instruction to the jury that the evidence should be used only for that limited purpose.

Presently, the parties' arguments are divided along the lines of the respective opinions of the Superior Court majority and dissent. Appellant highlights that the testimony the jurors heard relating to the employer identity issue was brief and expressly limited in scope, and the jurors never heard actual evidence of benefits payments. Appellant also notes that the Pennsylvania Rules of Evidence reflect the broad discretion that is vested in trial judges and specifically contemplate that limiting instructions may be given to structure the introduction of limited-purpose evidence and prevent reversible error, *see* Pa.R.E. 105, and criticizes the opinion of the Superior Court holding as being tantamount to an unwarranted *per se* rule precluding the admission of material evidence. As concerns its counsel's opening remarks, Appellant observes that no contemporaneous objection was asserted, and therefore,

claims that any challenge to the remarks has been waived. Moreover, Appellant maintains that the court's remedial charge was adequate to cure any prejudice, and, in any event, the return of a substantial damages award negates any possibility that prejudice actually ensued.

Appellee characterizes the Superior Court majority's holding as merely exemplifying mainstream enforcement of the strong and long-standing prohibition against introducing evidence of a collateral source. According to Appellee, the subject of workers' compensation is so inherently prejudicial that errors in permitting references to it cannot be corrected by simple admonishments to jurors to ignore the topic. In this regard, Appellant points to some of the more forceful statements of this Court which have arisen in various contexts.[5] Additionally, Appellee disputes the relevance of the premium payments to the employer identity issue, noting that the question of employment status is one of law, which turns on the exercise, or the right to exercise, control. Furthermore, even if it were to be determined that there was a disputed factual question as to which premium payments could be deemed relevant, Appellee's position is that the court was bound to implement bifurcation to prevent the possibility of taint, particularly since an employer, as a matter of law, cannot be a party in a personal injury action brought by an employee against a negligent third party. See *Heckendorn v. Consolidated Rail Corp.*, 502 Pa. 101, 109, 465 A.2d 609, 613 (1983). Appellee also complains that the trial court did not

---

5. *See, e.g., Lobalzo,* 409 Pa. at 21, 185 A.2d at 561 (indicating, upon finding irrelevant references to a plaintiff's receipt of workers' compensation benefits combined with a misleading jury charge issued by the trial court, that "[w]hen an error in a trial is of such a consequence that, like a dash of ink in a can of milk, it cannot be strained out, the only remedy, so that justice may not ingest a tainted fare, is a new trial"); *Lengle v. North Lebanon Twp.,* 274 Pa. 51, 53, 117 A. 403, 404 (1922) (observing that, once the matter of payment or receipt of workers' compensation benefits was put before a jury in a case in which it has no relevance "[c]orrective instructions had little chance to get this idea out of the jurors' minds"); *cf. Boudwin,* 410 Pa. at 33, 188 A.2d at 260 (reflecting a plurality statement that "[j]udges should be vigilant, in personal injury trespass cases, to keep out of the trial all references to benefits collaterally received by the plaintiff.").

truly exercise discretion in its refusal to bifurcate, since, in Appellee's view, the court failed to take into account that the duration of the trial was actually increased by the non-severance approach, and that bifurcation would have thwarted what Appellee describes as a conscious attempt on the part of Appellant's counsel to place workers' compensation in the forefront of the jurors' minds via pretextual means. Appellee contends that prejudice is apparent in light of the relatively modest compensation award, as contrasted with the damages case that he presented to the jurors.

On the issue that the Superior Court decided, namely the propriety of the trial court's ruling on bifurcation, we are in alignment with the position of Judge Beck. The decision whether to bifurcate is entrusted to the sound discretion of the trial court, which is in the best position to evaluate the necessity for such measures. *See Stevenson v. General Motors Corp.*, 513 Pa. 411, 422–23, 521 A.2d 413, 419 (1987) (reviewing a refusal to bifurcate under an abuse of discretion standard). That Appellee presents a different perspective than that of the trial court concerning the time and resources that two hypothesized proceedings would have consumed as compared with the single one that in fact ensued is unpersuasive, since Appellee offers nothing concrete that would cause us to question or disturb the trial court's comparative judgment in this regard.

Further, as Judge Beck noted, this Court has followed the majority view that, although evidence of a plaintiff's recovery from collateral sources is generally inadmissible and improper references may warrant a mistrial, an exception exists if the evidence of such recovery is relevant to a material issue in the case. *See, e.g., Beechwoods Flying Service*, 504 Pa. at 623–24, 476 A.2d at 353; *DeVita v. Durst*, 167 Pa. Cmwlth. 105, 116, 647 A.2d 636, 641 (1994) ("Courts have found evidence of insurance permissible where it is relevant to the issue in a case." (citation omitted)).[6] This exception is

6. *Accord* 22 Am.Jur.2d Damages § 763 (2004) ("[E]vidence that the plaintiff was compensated by a collateral source for all or a portion of

analogous to that which pertains, under the Rules of Evidence, to evidence of liability insurance maintained by a defendant.[7] Judge Beck appropriately distinguished decisions such as *Boudwin, Lobalzo,* and *Nigra* on the ground that, in each of those cases, the collateral source evidence was found to lack relevance or materiality relative to the issues presented at trial. *See Boudwin,* 410 Pa. at 36–37, 188 A.2d at 261; *Lobalzo,* 409 Pa. at 17, 185 A.2d at 559 (citation omitted); *cf. Nigra,* 797 A.2d at 358–59 (finding that, while federal disability benefits may have had some relevance the trial issues, the fact of their receipt by the plaintiff was improperly developed and highlighted by the defense).

We agree with Appellee that the matter of employment status is ultimately a question of law, and, where the facts are undisputed, it may be decided by the trial court without the

> the damages caused by defendant's wrongful act is generally inadmissible, although an exception exists if the evidence of payment from a collateral source is relevant to some other material issue in the case." (footnotes omitted)); 88 C.J.S. Trial § 138 (2004) ("[T]he fact that the plaintiff is insured or otherwise indemnified may be shown where it is a material issue in the case, or where it is brought out as an incident to the proof of some other fact properly involved, as, for example, employment[.]" (footnotes omitted).
>
> We recognize that some jurisdictions do maintain a *per se* rule against the admission of collateral source evidence. *See, e.g., Proctor v. Castelletti,* 112 Nev. 88, 911 P.2d 853, 854 (1996). Notably, while this Court has rejected a *per se* approach, it has taken a comparatively narrow view on the issue of when collateral source payments are relevant. *Compare* 2 Stein on Personal Injury Damages § 13:14 (3d ed. 2004) ("Under the liberal view, evidence of collateral payments is admissible, at least in the trial court's discretion, to show malingering."), *with Boudwin,* 410 Pa. at 36, 188 A.2d at 261 (reflecting a refusal to cognize the use of collateral source evidence to establish malingering), *and Lobalzo,* 409 Pa. at 20, 185 A.2d at 560 (same, with respect to attempted use of collateral source evidence for general impeachment purposes).

> 7. *See* Pa.R.E. 411 ("Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.").
>
> The collateral source rule as such is not specifically developed in the Rules of Evidence, but is referenced in a comment to Rule 402 as an exclusionary precept that is not abrogated by the Rules' adoption.

necessity of fact finding. *See JFC Temps, Inc. v. WCAB (Lindsay and G & B Packing)*, 545 Pa. 149, 153, 680 A.2d 862, 864 (1996). However, this is ordinarily accomplished via a dispositive pre-trial motion, such as a motion for full or partial summary judgment. *See, e.g., Mullins v. Sun Co.*, 763 A.2d 398, 399–401 & n. 3 (Pa.Super.2000). But in this case, although it appears that the relevant facts concerning the employment issue were largely undisputed, Appellee did not seek partial summary judgment to gain a global, pre-trial disposition of the question.[8] Accordingly, we discern no abuse of discretion or error of law in the court's apparent understanding that the facts may have been in dispute and, correspondingly, in its decision to proceed with the fact finding process. *See generally JFC Temps*, 545 Pa. at 153, 680 A.2d at 864 ("the question of whether an employer-employee relationship exists is one of law, *based upon findings of fact.*" (citation omitted; emphasis added)).[9] Furthermore, we agree with the trial court that the payment of workers' compensation premiums, while certainly not dispositive, was a potentially relevant consideration in determining the identity of the employer.[10] As Appellant highlights, contemporaneous with the

8. Appellant did file a motion for summary judgment based on the employer-immunity statute, but obviously the trial court was not disposed to grant relief in its favor based on the facts presented. *See supra* note 1.

9. In any event, Appellee's present position on this point was not maintained before the trial court. Rather, at trial, his counsel confessed confusion regarding the issue, as follows:

> I've looked over some cases. I must admit I've not looked over them completely. I'm not a hundred percent sure. I've seen some cases that say that ultimately determination of who's an employer is a legal issue. If the facts are in dispute they go to the jury. But I've never seen it done in a liability case like this, number one. And number two, I don't know what facts you ask the jury to resolve. I just don't know. I was puzzling over that last night. And I still don't know. I don't think the jury gets asked who's the employer because that's the legal issue. But short of that, what questions can a jury resolve that then the court can rule on as a matter of law, I'm somewhat at the moment befuddled.

R.R., at 451a–452a.

10. *Accord McLandrich v. Southern Cal. Edison Co.*, 917 F.Supp. 723, 731 (S.D.Cal.1996) (identifying as a putative employer's payment of workers' compensation premiums as a relevant consideration in deter-

trial court's decision on bifurcation, the court issued a carefully crafted order designed to allow the evidence for its probative effect while diminishing the prejudicial impact.

Based on the foregoing, we find no abuse of discretion in the trial court's decision on bifurcation, which was the subject of Appellee's first two issues raised in his appeal and was the expressed basis for the Superior Court's disposition. Appellee seeks to conflate (and to some degree it appears that the Superior Court majority reasoning conflated) the bifurcation decision with the two instances in which Appellant's counsel affirmatively violated the trial court's pre-trial order by referencing workers' compensation matters other than the payment of premiums by Appellant to establish an employment relationship. At the time that the court issued its pre-trial order, however, it was entitled to expect that its straightforward ruling limiting references to workers' compensation would be respected and implemented by counsel. We decline, therefore, to inject considerations arising from hindsight into review of the sustainability of the pre-trial order as such.[11]

mining the existence of an employment relationship); *Lankford v. Gulf Lumber Co.*, 597 So.2d 1340, 1345 (Ala.1992) (same); *Johnson Timber Corp. v. Sturdivant*, 295 Ark. 622, 752 S.W.2d 241, 247 (1988) (" 'Payment of workers' compensation insurance premiums is evidence relating to the status as employer-employee[.]' "); *cf.* 3 LARSON'S WORKERS' COMPENSATION LAW § 63.04[2], at 63–7 (1999) (discussing the limited role of insurance premium payments in determining employment status, describing such as "at most persuasive").

11.  In *K.H. v. J.R.*, 573 Pa. 481, 826 A.2d 863 (2003), the general rule was expressed that a notice of appeal filed from the entry of judgment is viewed as drawing into question any prior non-final orders that produced the judgment. *See id.* at 493–94, 826 A.2d at 871.  It was therefore an available choice for Appellee, having filed a notice of appeal relative to the final judgment, to challenge the trial court's bifurcation ruling as such.  However, the proper review in such instance is obviously centered on an examination of the record for abuse of discretion as of the time that the bifurcation ruling was made, rather than from an end-of-trial perspective.

Notably, the principles governing appellate review of a trial court's resolution of a motion for a new trial overlap with the review standard pertaining to the trial court's pre-trial order and, obviously, further subsume an assessment of the appropriate remedy where an abuse of discretion or error of law is discerned.  *See Harman v. Borah*, 562 Pa. 455, 467, 756 A.2d 1116, 1122 (2000).

While counsel's subsequent violations may give rise to redress in their own right,[12] they have little bearing on the propriety of the trial court's ruling on bifurcation in the first instance.

In light of our holding that the trial court did not abuse its discretion in refusing to bifurcate the employer identification question and other trial issues in this case, the Superior Court's order is vacated, and the matter is remanded for consideration of the remaining issues that were raised and properly presented in the appeal to the Superior Court.

Justice BAER files a dissenting opinion in which Justice NEWMAN joins.

## DISSENTING OPINION

Justice BAER.

While I commend the majority for its thorough review of the record in this case and its summary of Pennsylvania's precedent as well as that of our sister states, I respectfully disagree with the result reached. The divergence of our opinions results from fundamentally different views of the impact of collateral source evidence on the minds of jurors and the corresponding role of the trial court in determining whether to admit references to a plaintiff's prior collateral source recovery.

As aptly noted by the majority, our Court long has observed the prejudicial effect of collateral source information. *See* Maj. Op. at 373, n. 5, 883 A.2d at 556, n. 5 (quoting *Boudwin v. Yellow Cab Co.*, 410 Pa. 31, 188 A.2d 259, 260 (1963) (plurality)); *Lobalzo v. Varoli*, 409 Pa. 15, 185 A.2d 557, 561 (1962);

12. There are significant issues connected with whether or not Appellee may secure relief based on these violations which, in light of the Superior Court's approach, have not yet been addressed. For example, with regard to counsel's opening remarks, Appellant raised a waiver issue based upon the failure of Appellee's counsel to assert a contemporaneous objection. *See* Brief of Appellee (Superior Court), at 7, 13–14. As another example, with respect to the reference to workers' compensation arising during the cross-examination of Appellee's father, an at least moderately distinct analysis should apply, since this was not a collateral source reference relative to the present case, as no recovery for the injuries in question was implied.

*Lengle v. North Lebanon Twp.*, 274 Pa. 51, 117 A. 403, 404 (1922). When a juror hears that a plaintiff has previously received compensation for his injuries, it is only natural for the juror to weigh that information, either consciously or not, in the calculation of damages due to the plaintiff and decrease the plaintiff's award, thereby allowing the tortfeasor to "ride to immunity from his wrong on the back of worker's compensation paid by someone else." *Boudwin*, 188 A.2d at 259. As a juror in a criminal trial may question why a defendant has failed to present her side of the story when a prosecutor highlights the defendant's decision not to take the stand, so too may a juror in a civil trial question why a plaintiff should be double compensated for his injury when faced with evidence of collateral source recovery. Once introduced into evidence, "like a dash of ink in a can of milk, it cannot be strained out." *Lobalzo*, 185 A.2d at 561; *see also Eichel v. New York Cent. R.R. Co.*, 375 U.S. 253, 255, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963) ("[W]e must recognize that the petitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact.").

Consequently, this Court has tried to insulate our juries from references to collateral source information. The majority acknowledges the rationale for barring references to collateral sources but appropriately recognizes an exception to the rule: "although evidence of a plaintiff's recovery from collateral sources is generally inadmissible and improper references may warrant a mistrial, an exception exists if the evidence of such recovery is relevant to a material issue in the case." Maj. Op. at 373–74, 883 A.2d at 557. I concur with the majority's view that this exception may be appropriate in certain limited cases; the exception as implemented by the majority, however, has the potential to swallow the rule.

The majority affirms the trial court's decision not to bifurcate the employer issue from the liability issues based on the conclusion that workers' compensation "was a *potentially* relevant consideration" to the employer issue.[1] Maj. Op. at 374–

---

1. Moreover, as noted by the majority, the payment of workers' compensation premiums, in fact, was not determinative of the employer issue. Maj. Op. at 368, n. 1, 883 A.2d at 553, n. 1.

76, 883 A.2d at 558 (emphasis added). I cannot subscribe to the view that potential relevance justifies the extreme prejudice likely to result from the admission of collateral source evidence. Moreover, I cannot conclude, as does the majority, that the trial court's order limiting references to premiums paid, as opposed to benefits received, sufficiently "diminish[ed] the prejudicial impact." Maj. Op. at 376–78, 883 A.2d at 559. It is but a small leap of logic for a juror to conclude that if premiums were paid by the employer, so too were benefits paid to the injured employee.

While I acknowledge that bifurcation should be utilized sparingly[2] and that such decision is within the sound discretion of the trial court, I believe that once the plaintiff raised the prejudicial effect of collateral source evidence in its motion to bifurcate, see R.R. at 55, the trial court should have heeded our suggestion that "Judges should be vigilant . . . to keep out of trial all references to benefits collaterally received by the plaintiff." *Boudwin*, 188 A.2d at 260. Rather than merely "balancing considerations of judicial economy and fairness," Maj. Op. at 368–70, 883 A.2d at 554, the court should have considered fully and carefully the practicality of resolving the employer issue, in a brief, non-jury, pre-trial proceeding, obviating any need to adduce the tainted evidence before the jury. If the trial court had done so, it would have determined pre-trial what it determined at the conclusion of testimony: that the employer issue was a question of law to be resolved by the court itself without necessitating any findings by the jury because the facts in this regard were "largely undisputed." Maj. Op. at 374–76, 883 A.2d at 558.[3]

**2.** As we have previously stated, bifurcation "should be carefully and cautiously applied and be utilized only in a case and at a juncture where informed judgment impels the court to conclude that application of the rule will manifestly promote convenience and/or actually avoid prejudice. Piecemeal litigation is not to be encouraged." *Stevenson v. General Motors Corp.*, 513 Pa. 411, 521 A.2d 413, 419 (1987) (quoting *Brown v. Gen. Motors Corp.*, 67 Wash.2d 278, 407 P.2d 461, 464 (1965)).

**3.** The majority apparently would have required the plaintiff to file a partial summary judgment motion to gain a "global pre-trial disposition of the question" and therefore does not fault the trial court's "apparent

While I do not endorse the view of those of our sister states who have forged a *per se* rule prohibiting reference to collateral source information,[4] I would require more than mere relevance to the material issues of the case, and certainly more than potential relevance, given the extreme prejudice inherent in collateral source information.  Only when a court determines that resolution of the material issues is either impossible or impractical without admission of the offending evidence should a court allow the jury to be exposed to collateral source evidence.  Instead of a trial court determining whether bifurcation is "unnecessary," *see* Maj. Op. at 368–70, 883 A.2d at 554, the question posed by the court should be whether the

understanding that the facts may have been in dispute and, correspondingly, its decision to proceed with the fact finding process." Maj. Op. at 374–76, 883 A.2d at 558.  As I believe the bifurcation motion and the universally acknowledged proscription against placing collateral sources of recovery before a jury should have prompted the court to determine if the factual and legal issues relating to the employer issue required presentation to the jury, I conclude that the trial court abused its discretion in deferring determination of the issue until conclusion of the trial, when the damage was irreparable.

4.  *See Proctor v. Castelletti*, 112 Nev. 88, 911 P.2d 853, 854 (1996) (adopting "a *per se* rule barring the admission of a collateral source of payment for an injury into evidence for any purpose"); *Reinan v. Pacific Motor Trucking Co.*, 270 Or. 208, 527 P.2d 256 (1974) (collecting cases and applying a strict exclusionary rule to collateral source evidence).  Additionally, a number of other jurisdictions, while not adopting *per se* rules, have severely restricted the admission of such evidence. *See Lund v. San Joaquin Valley R.R.*, 31 Cal.4th 1, 1 Cal.Rptr.3d 412, 71 P.3d 770, 777 (2003) (acknowledging California's precedent that collateral source information will only be admitted upon "a persuasive showing that the evidence sought to be introduced is of substantive probative value"); *Gurliacci v. Mayer*, 218 Conn. 531, 590 A.2d 914, 929 (1991) (collecting cases and adopting the standard that provides for an exception to the collateral source bar for evidence of malingering by the plaintiff where there is "corroborative evidence and a proper limiting instruction"); *Sheffield v. Superior Ins. Co.*, 800 So.2d 197, 203 (Fla.2001) ("Although we did not announce a *per se* rule of reversal . . ., we recognized the inherently damaging effects of the jury hearing collateral source evidence both on the issues of liability and on issues of damages.); *Haischer v. CSX Transp., Inc.*, 381 Md. 119, 848 A.2d 620 (2004) (permitting certain limited exceptions to the inadmissibility of collateral source evidence in cases under the Federal Employer's Liabilities Act and the Boiler Inspection Act where the plaintiff claims financial distress due to the injury and such evidence is used for the limited purpose of testing plaintiff's credibility).

exposure of the collateral source information to the jury is necessary. If the answer is no, then the trial should be bifurcated and the jury insulated from the collateral source evidence.

Consequently, I would affirm the decision of the Superior Court because it was an abuse of discretion for the trial court to fail to determine whether it was possible to resolve the issue as a matter of law without exposing the jury to collateral source evidence.

Justice NEWMAN joins this Dissenting Opinion.