J-A19042-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DONNA J. BARNHART, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JONATHAN L. BARNHART, | : | |
| | : | |
| Appellant | : | No. 1378 WDA 2014 |

Appeal from the Decree entered on July 23, 2014
in the Court of Common Pleas of Cambria County,
Civil Division, No. 2005-3380

BEFORE: BENDER, P.J.E., JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED NOVEMBER 13, 2015**

Jonathan L. Barnhart ("Husband"), *pro se*, appeals the July 23, 2014 Decree of divorce between Husband and Donna J. Barnhart ("Wife"), which incorporated the April 23, 2010 Master's Report and Recommendation regarding equitable distribution of the parties' marital property. We deny Wife's Motion to Quash the appeal, and affirm the Decree.

In his prior appeal, Husband, *pro se*, appealed the trial court's January 11, 2012 Decree of divorce, which also adopted the April 23, 2010 Master's Report and Recommendation, as incorporated into the trial court's December 29, 2010 Opinion and Order. Husband claimed, in his prior appeal, that outstanding issues remained regarding certain martial assets. A panel of this Court determined that the January 11, 2012 Decree was not final because "neither the master nor the trial court provide[d] a discussion as to

the factors contained in 23 Pa.C.S.A. § 3502(a) or other rationale for the split of assets." ***Barnhart v. Barnhart***, 68 A.3d 354 (Pa. Super. 2013) (unpublished memorandum at 3). The panel urged the trial court, upon remand, to provide a detailed explanation for its decision. ***See id***.[1]

Upon remand, the trial court issued an Order on January 17, 2014, scheduling a status conference for March 12, 2014, at which the parties were to provide the trial court with "information relative to any and all outstanding issues … so that the court [could] either immediately address those issues or refer those issues to [Master George] Gvozdich [Jr., Esq. ("Master Gvozdich")] for further hearing or further recommendation without hearing." Trial Court Order, 1/17/14 at 1. Husband was present at the

---

[1] In addressing Husband's prior *pro se* appeal, a panel of this Court noted that Husband's brief "was so poorly drafted that this Court could have quashed the appeal based on the briefing defects." ***Barnhart***, 68 A.3d 354 (unpublished memorandum at 3-4). The panel went on to admonish Husband, as follows:

> Our review of the record reveals that much of the complexity plaguing this case is the result of Husband's *pro se* representation in the later stages of the proceedings. … [W]e remind Husband that this Court does not extend special privileges to *pro se* litigants[,] allowing them to ignore the rules of appellate procedure. **We strongly suggest to Husband that he retain counsel to represent him for the duration of these proceedings, so that they may be concluded with minimal complication and delay**.

*Id*. at 4-5 (emphasis supplied). Despite this Court's prior recommendation, Husband has chosen to continue to proceed *pro se* in this action. Notably, Husband is an employed medical doctor, and the trial court determined that his earning capacity is $12,556.00 per month. **See** Trial Court Findings, 7/23/14, at 5.

March 12, 2014 status conference, but *chose not to identify any issues which required further hearing or recommendation*. Thereafter, the trial court issued its July 23, 2014 Decree of divorce, which incorporated the April 23, 2010 Master's Report and Recommendation, and provided an explanation regarding equitable distribution of the parties' marital property.

Husband filed a timely Notice of Appeal, and a court-ordered Concise Statement of Matters Complained of on Appeal.

On appeal, Husband raises the following issues for our review:

1. Did the trial court deny [Husband] his right to due process?

2. Did the trial court err by refusing to recuse?

3. Did the trial court err by failing to equitably distribute the marital property?

4. Did the trial court err by failing to bifurcate?

5. Is [Husband] entitled to counsel fees?

Husband's Brief at 6.[2]

In his first issue, which consists of several sub-issues, Husband contends that the trial court failed to provide him with notice of the March 12, 2014 status conference, thereby denying him due process. *Id*. at 16. Husband asserts that he was in the courtroom at the time of the status conference because he had other matters pending before the trial court, but

---

[2] As was the case in Husband's prior appeal, Husband's brief is so poorly drafted that this Court could have quashed the appeal based on the briefing defects. *See* Pa.R.A.P. 2111. However, to the extent possible, we have attempted to discern the issues raised by Husband.

objected to the status conference and refused to participate in it on the basis that he had not received notice of the conference.[3] *Id*. at 17. Husband claims that the trial court ignored his objections, and proceeded with the status conference, effectively depriving Husband of his right to notice and his right to defend himself. *Id*. at 18-19.

Initially, we observe that, pursuant to its January 17, 2014 Order, the trial court, upon remand, sought "information relative to any and all outstanding issues … so that the court [could] either immediately address those issues or refer those issues to [Master] Gvozdich [] for further hearing or further recommendation without hearing." Trial Court Order, 1/17/14 at 1. Husband, a *pro se* litigant, having recently prevailed in his prior appeal, *an appeal that was premised on the need for the trial court to address certain outstanding issues regarding marital assets and conduct further hearings regarding such issues*, was well-aware of the outstanding issues which, he claimed, required a hearing. In fact, on January 2, 2014, Husband

---

[3] Pursuant to the January 17, 2014 docket entry, notice of the March 12, 2014 status conference was to be sent to "James Pappas, Esq[. ("Attorney Pappas")], Defendant, Master [] Gvozdich, [] and copy to DRO[.]" Husband, who is the sole "defendant" in this case, contends that the docket entry should be construed as incorrectly identifying Attorney Pappas, who is Wife's attorney, as the attorney for the "Defendant." Utilizing this construction, Husband argues that the notice intended for Husband must have been sent to Attorney Pappas. Husband's Brief at 16-17. Wife contends that the docket entry clearly directed that notice be sent to both Attorney Pappas, as counsel for Wife, and to Husband, *pro se*, as the "Defendant." Wife's Brief at 8. We concur with Wife's interpretation of the docket entry.

had written to Master Gvozdich, specifically referencing the necessity for additional hearings. *See* Husband's Letter, 1/2/14, at 2 (unnumbered).

Our review discloses that Husband was present at the March 12, 2014 status conference and afforded the opportunity to advise the trial court of the outstanding issues and matters for which he sought a hearing, but Husband chose not to do so. Accordingly, we conclude that the notice issue raised by Husband is without any support in the record.[4]

Husband also contends that the trial court violated his right of due process by refusing to conduct a hearing on his Motion to Compel and for Sanctions following Wife's failure to respond to Husband's discovery requests. Husband's Brief at 21. Specifically, Husband claims that Wife failed to respond to Husband's Request for Production of Documents, "which requested, *inter alia*, information on undeclared bank accounts, dissipated marital assets, property assets, perjury and hidden assets." *Id*. Husband asserts that the trial court refused to permit a hearing on these matters. *Id*.

---

[4] Husband raises this same "lack of notice" issue throughout his brief. *See* Husband's Brief at 16-19, 25-26, 28-29, 31, 33, 34, 39. However, as we have already addressed this issue, we decline to address it further, despite Husband's repeated references thereto. Relatedly, Husband contends that the trial court erred by failing to conduct additional hearings, upon remand, despite a directive from this Court to conduct further proceedings in the equitable distribution matter. *Id*. at 19-20, 32-33, 35, 39. However, we conclude that Husband's *refusal to participate* in the March 12, 2014 status conference, or to inform the trial court *at that status conference* of the outstanding issues and matters for which Husband sought a hearing, resulted in a waiver of this issue. *See* Pa.R.A.P. 302(a).

Our review of the record discloses that, contrary to Husband's assertions, the trial court conducted hearings on April 29, 2011, and August 2, 2011, regarding marital assets. Notably, Husband sought a continuance of the April 29, 2011 hearing, asserting that he sought to be heard regarding "stolen (and/or hidden) assets." Civil Continuance Request, 4/18/11, at 1; *see also* Husband's Letter to Judge F. Joseph Leahey ("Judge Leahey"), 4/18/11, at 2 (requesting a continuance of the April 29, 2011 hearing, and averring "significant assets not disclosed by [Wife]."). Although Judge Leahey denied Husband's request for a continuance, Judge Leahey specifically stated in his Order that Husband could testify at the April 29, 2011 hearing by telephone. *See id*. Husband does not contend that he was denied the opportunity to raise these issues at the April 29, 2011 hearing regarding martial assets, or at the subsequent hearing regarding martial assets on August 2, 2011. Thus, we conclude that this issue lacks support in the record.

Husband next contends that he was denied due process by impartial jurists. Husband's Brief at 21. Husband argues that Judge Timothy P. Creany ("Judge Creany") was biased, bore animosity toward Husband, disregarded statutes, and defended Judge Leahey at a hearing regarding

Husband's Motion to Recuse Judge Leahey. *Id*. at 23.[5] Husband claims that the appearance of Judge Creany's prejudice toward Husband is sufficient to warrant the grant of new proceedings to Husband. *Id*. at 29.[6]

Husband also asserts that Master Gvozdich was biased against Husband. *Id*. Husband contends that, although Master Gvozdich initially ordered Wife to pay $6,000.00 in Master's fees and costs, he subsequently ordered Husband to pay those fees and costs, and thereafter filed a Petition for Contempt against Husband. *Id*. at 29-30.[7]

"The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." *Coulter v. Ramsden*, 94 A.3d 1080, 1088 (Pa. Super. 2014); *see also* Pa.R.A.P. 2119(a) (stating that the appellant's brief "shall

---

[5] Notably, in its Findings, the trial court noted that "[t]his case has been fraught with allegations of misconduct by [Husband] against every person and entity involved during its pendency." Trial Court Findings, 7/23/14, at 2-3.

[6] In support of his argument, Husband cites to portions of the transcript of the March 12, 2014 status conference, as well as a hearing conducted by Judge Creany on that same date, in another case involving Husband, entitled *Barnhart v. Treece*, 395 WDA 2014. Our review of the excerpts cited by Husband reflect no bias or ill-will by Judge Creany. However, such excerpts reflect a grave disrespect for the tribunal *by Husband*.

[7] Husband also generally claims that "the docket in the instant matter is replete with illegitimate hearings regarding custody and multiple payments to hearing officers who have no jurisdiction to hear matters of primary custody." Husband's Brief at 31. However, as none of the trial court's custody rulings are before us, this assertion is beyond the scope of our review.

have ... such discussion and citation of authorities as are deemed pertinent."). "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." *Coulter*, 94 A.3d at 1088 (citation omitted). This Court will not act as counsel, and will not develop arguments on behalf of an appellant. *See id*. at 1088-89 (stating that mere issue spotting without analysis or legal citation to support an assertion precludes appellate review of a matter).

We need not reach the merits of this issue because the argument section of Husband's brief consists of general statements unsupported by any discussion or analysis of relevant legal authority. *See* Husband's Brief at 21-31. While Husband's brief does contain scant reference to case law, *see id*. at 25, 29, 31, it completely lacks any discussion or developed analysis relevant to the issue. *See Coulter*, 94 A.3d at 1088-89. Accordingly, we conclude that Husband's lack of analysis precludes our review of this issue. *See id*.

Next, Husband contends that he was denied counsel and "<u>forced</u> to represent himself due to the trial court's repeated failure to provide him due process, opposing counsel's unethical conduct, and the failure of all attorneys to challenge rogue judges." Husband's Brief at 31-32 (emphasis in original).

Again, Husband's brief is devoid of meaningful discussion of, or citation to, relevant legal authority regarding this issue. *See* Husband's Brief at 31-32. Accordingly, we conclude that Husband's lack of analysis precludes our review of this issue. *See Coulter*, 94 A.3d at 1088-89.

Husband finally contends that his due process rights were violated as he was denied a fair and just decision. Husband's Brief at 32-36. Husband cites to this Court's prior Opinion, wherein a panel of this Court remanded this matter to the trial court "for further proceedings to dispose of the parties' claim [for equitable distribution] conclusively[,]" and stated "we urge the trial court to provide a detailed explanation for its [equitable distribution] decision." *Id*. at 32 (citing *Barnhart*, 68 A.3d 354 (unpublished memorandum at 4). Husband contends that "no hearings were conducted that identified these assets or the values[,] because the trial court, [M]aster, and [Wife] disagreed with this [] Court's decision." Husband's Brief at 32. Husband asserts that, in his July 23, 2014 Findings and Decree, Judge Creany erred by adopting Judge Leahey's Opinion, despite Judge Leahey's later recusal from the proceedings. *Id*. at 34.[8] Husband claims that the trial court also erred by adopting Master Gvozdich's Report and Recommendation because Husband's exceptions to the Master's

---

[8] Here, Husband has appealed the trial court's July 23, 2014 Decree, which did *not* adopt Judge Leahey's December 29, 2010 Opinion and Order. Rather, in its July 23, 2014 Decree, the trial court adopted the April 23, 2010 Master's Report and Recommendation. Thus, we conclude that this argument lacks merit.

Report and Recommendation were heard by Judge Leahey, who later recused. *Id*. at 34-35. Husband argues that Judge Creany's subsequent determination that Judge Leahey's decision was just and fair is tainted. *Id*. at 35. Husband points out that he has requested "[Judge] Creany[,] as well as the other judges in the Court of Common Pleas[, to] recuse [themselves from] all [of Husband's] matters." *Id*. Husband contends that the July 23, 2014 Decree from which he appeals is "the same Order that was considered deficient in the previous appeal." *Id*. at 36.

In its July 23, 2014 Findings, the trial court provided a detailed review of Master Gvozdich's April 23, 2010 Report and Recommendation. *See* Trial Court Findings, 7/23/14, at 2-6. In so doing, the trial court discussed the factors set forth in 23 Pa.C.S.A. 3502(a), which are to be considered by the trial court in fashioning an equitable distribution award, and identified the place in the Master's Report and Recommendation where each such factor was addressed and discussed. *See* Trial Court Findings, 7/23/14, at 3-6. Based on his independent review of the Master's Report and Recommendation, Judge Creany determined that Master Gvozdich had properly applied each of the section 3502(a) factors. *See id*. at 6. Judge Creany further determined that, because most of the factors weighed in favor of Wife, the asset split of 64% to Wife and 36% to Husband was appropriate. *See id*.

Moreover, as noted above, Husband *refused to participate* in the March 12, 2014 status conference, or to inform the trial court *at that status conference* of the outstanding issues and matters for which Husband sought a hearing. Thus, we conclude that Husband cannot fault the trial court for failing to conduct hearings on issues that Husband refused to identify. Accordingly, we conclude that this issue lacks merit.

In his second issue, Husband contends that Judge Creany erred by failing to recuse himself. Husband's Brief at 36. Husband cites Rule 2.11 of the Judicial Code of Conduct, and cites briefly from three cases. *Id*. at 36-37.

Husband makes no effort to analogize or compare the cited cases to his circumstances. *See id*. When issues are not properly raised and developed in briefs, a court will not consider the merits thereof. *See Hercules v. Jones*, 609 A.2d 837, 840 (Pa. Super. 1992) (holding that "without any argument linking the definition to the facts of this case, this Court is unable to address appellant's phantom argument and we find the issue to be waived."). Further, we decline to become Husband's counsel. *See Coulter*, 94 A.3d at 1089. Accordingly, we conclude that Husband is not entitled to relief.

In his third issue, Husband contends that the trial court erred by failing to equitably distribute the marital property. Husband's Brief at 37-39. In support of this contention, Husband asserts that the trial court failed to hold

additional hearings, as directed by this Court on remand. *Id*. at 39. In the alternative, Husband argues that the trial court "fail[ed] to provide notice, hearings, impartial jurists, and the resultant decisions." *Id*. Husband claims that "these fatal errors are sufficient to warrant new hearings before an appointed impartial tribunal." *Id*.

Husband has failed to identify any item of marital property that was not equitably distributed, or the manner in which the trial court allegedly failed to equitably distribute such property. *See id*. at 37-39. Accordingly, we conclude that Husband's failure to develop this argument in any meaningful fashion precludes our review of this issue. *See Coulter*, 94 A.3d at 1088-89.[9]

In his fourth issue, Husband contends that the trial court erred by failing to bifurcate the action. Husband's Brief at 39. Husband asserts that he filed a Petition to Bifurcate in 2009, which Wife opposed. *Id*. Husband claims that the trial court denied the Petition, without explanation. *Id*. at 40. Husband argues that there was no logical reason that the matter could not have been bifurcated at that time. *Id*.

The decision whether to sever or bifurcate is entrusted to the discretion of the trial court, which is in the best position to evaluate the necessity for taking such measures. *Ball v. Bayard Pump & Tank Co.*, 67

---

[9] Even if we were to attempt to address Husband's claim, we have already addressed each of the arguments raised by Husband in support of his third issue. Accordingly, based on our prior discussion, we would have concluded that this issue lacks merit.

A.3d 759, 767 (Pa. 2013). For that reason, a trial court's decision on a motion to bifurcate will generally not be disturbed absent an abuse of discretion. *See Gallagher v. Pa. Liquor Control Bd.*, 883 A.2d 550, 557 (Pa. 2007).

Here, Husband has failed to develop this argument in any meaningful fashion. *See Coulter*, 94 A.3d at 1088-89. Accordingly, we conclude that Husband's failure to develop this argument precludes our review of this issue. *See id.*[10]

---

[10] Even if we had addressed this issue, we would have concluded that it lacked merit. Our review of the record discloses that, when Husband presented his Petition to Bifurcate, Master Gvozdich had not yet issued his Report and Recommendation regarding equitable distribution. At the hearing conducted by the trial court on Husband's Petition to Bifurcate, Husband sought bifurcation of the action on the basis that his youngest child had attained school age, and Husband felt that Wife "should have had gainful employment … [However, s]he has chosen to wait to become employed so she could stay home and live a lifestyle that she chooses instead of working to support the children as she should be required." N.T. (Petition to Bifurcate), 11/16/09, at 2. The trial court expressed its concern that an order granting bifurcation and a subsequent entry of a divorce decree, *prior to the conclusion of the equitable distribution proceedings*, could be detrimental to the parties. *See id*. at 5. The trial court was particularly concerned with the possibility that, when the Master's recommendations were issued, they might be appealed by one or both of the parties, thereby prolonging the equitable distribution proceedings. *See id*. Wife's counsel vehemently opposed bifurcation on the basis that (1) Wife did not have sufficient funds to pay her medical coverage; (2) there were no QDRO's; (3) IRAs and pensions had not been separated; and (4) the parties' joint real estate would be turned into tenancies in common, potentially resulting in liens on such properties if Husband was not keeping up with the mortgages. *See id*. at 6-7. Thus, based on our review of the record, we cannot conclude that the trial court abused its discretion in declining to grant Husband's Petition, given the status of the equitable distribution proceedings at the time the Petition was presented and argued.

In his final issue, Husband contends that he is entitled to counsel fees. Husband's Brief at 40. Husband asserts that, although the matter of custody is not at issue in this appeal, "the failure of the trial court and [Wife's] counsel [to] obey the rules concerning custody negatively impacted the matter of divorce." *Id*. Husband claims that custody hearings conducted by Hearing Officer Ralph J. Trofino were "illegitimate," and "significantly contributed to the delay and increased costs in this case." *Id*. at 42. Husband argues that he has "filed numerous verified complaints regarding the misconduct and corruption within the trial court (judges, hearing officers, master, and opposing counsel[),]" and claims that "the conduct of the trial court was obdurate, vexatious, and dilatory." *Id*. at 42-43.

As we have indicated previously, no custody rulings are presently before us in this appeal. Husband has elected to appeal the trial court's equitable distribution rulings, not its custody rulings. Thus, this claim is not properly before us.[11]

Motion to Quash denied. Decree affirmed.

---

[11] Even if this issue was properly before us, Husband has failed to identify the *manner* in which he raised the issue of counsel fees before the trial court, and *how the issue was passed upon* by the trial court. *See* Pa.R.A.P. 2117(c). Husband has also failed to identify the *place in the record* where he raised the issue of counsel fees before the trial court. *See* Pa.R.A.P. 2119(c). Notably, Husband's reference to the March 12, 2014 status conference reflects, at best, a request for court costs, not counsel fees. *See* Husband's Brief at 42. Thus, we conclude that Husband is not entitled to relief on appeal. *See* Pa.R.A.P. 302(a).

J-A19042-15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/2015